GRAHAM et al. v. JACKSON.   (No. 5723.)

(Court of Civil Appeals of Texas. San Antonio. Nov. 8, 1916.)

1. LANDLORD AND TENANT ⬤⇒19—RENT—RECOVERY AGAINST THIRD PERSON.

Where plaintiff, the lessee of land adjoining defendant's, was about to rent his land for a certain sum, but, after talking to defendant, the prospective tenant declined to rent, and plaintiff afterwards leased to another for the same term at the same rental, plaintiff was not entitled to recover of defendant for depriving him of the rental.

[Ed. Note.—For other cases, see Landlord and Tenant, Dec. Dig. ⬤⇒19.]

2. LANDLORD AND TENANT ⬤⇒19—RENT OF PASTURE—RECOVERY AGAINST THIRD PERSON.

Where plaintiff, lessee of a farm adjoining defendant's, their pasture land being in one inclosure, contracted to lease to a third party a number of acres for pasturage, and, when the third party had turned cattle into the common inclosure, defendant stated that there were too many, considering the amount of plaintiff's land, and proposed to see his lawyer, so that the third party decided that if he could not put in a cer-

tain number of cattle without controversy with defendant he did not care for the lease, and plaintiff agreed to cancel the lease contract, plaintiff had no cause of action against defendant.

[Ed. Note.—For other cases, see Landlord and Tenant, Dec. Dig. ⚖=19.]

3. MONEY RECEIVED ⚖=5—RIGHT OF RECOVERY—PRIVITY.

Plaintiff, as lessee of a farm, and defendant, the owner of an adjoining farm, had their pasturage in one inclosure. A third person, who had rented pasturage from plaintiff, took out his cattle at defendant's instance and offered to pay plaintiff for the time the cattle were in the pasture, which offer plaintiff refused to accept, whereupon the renter went to defendant and paid him an amount for pasturage which he believed he owed to some one, though defendant made no claim thereto. *Held*, that defendant was not liable to plaintiff for the amount received, since it was not paid for plaintiff and there was no privity between plaintiff and defendant.

[Ed. Note.—For other cases, see Money Received, Cent. Dig. §§ 14–20; Dec. Dig. ⚖=5.]

Appeal from Uvalde County Court; T. M. Milam, Judge.

Suit by J. W. Graham and others against T. J. Jackson. From a judgment for defendant, plaintiffs appeal. Affirmed.

L. Old, of Uvalde, for appellants. G. B. Fenley and I. H. Burney, both of Uvalde, for appellee.

MOURSUND, J. J. W. Graham, by lease from the owners, had the right of possession to 320 acres of land, fronting on the bank of the Leona river; said land having a width of one-quarter mile and running back two miles. Seventy acres of said land, lying across the front, was in cultivation, leaving 250 acres of pasture land. Just south of Graham's land, T. J. Jackson owned 1,280 acres of land, also fronting on the Leona river, and having a width of one mile, and running back two miles. He had in cultivation 250 acres fronting on the river and adjoining Graham's cultivated land. The remainder of Jackson's land, 1,030 acres, was pasture land. He had about three-fourths of a mile river frontage in his pasture. The cultivated land of each was fenced separately, there being a lane between the farms, which was in dispute between Jackson and the owners of the land held by Graham, and a separate suit was pending with reference to the boundary line between the two surveys, which involved this land. Back of the farms there was no division fence, all the pasture land being in one inclosure. Graham and Jackson never made any agreement with regard to the number of head of stock each was to keep in the pasture, and certain differences and controversies arose, which led to the institution of this suit by Graham. He alleged that, although each had the right to make reasonable use of the pasture by grazing same with a reasonable number of animals, Jackson had willfully, wrongfully, and

arbitrarily seized and held possession of said land for two years. He then undertakes to describe the manner in which Jackson seized and held possession, in substance, as follows: (1) That for the year 1913 he rented his interest in said pasture to Albert Finley, who contracted to pay $75 as rent for nine months of said year, and that Jackson wrongfully and willfully seized possession of said land and refused to allow Finley to pasture same, whereby plaintiff was damaged to the extent of said sum of $75, and also to the extent of $25, the reasonable rental value for the remainder of the year 1913. (2) That for the year 1914 he made a contract with Dolph Briscoe, by which Briscoe was to lease the pasture and pay| therefor certain personal property, of which we omit description, which plaintiff accepted at the agreed price of $300; that defendant again wrongfully seized possession of said pasture, refused to let Briscoe pasture the same, and refused to allow his cattle to get water at the river, and by intimidation and threats compelled him to remove his cattle, and plaintiff was compelled to return said personal property received for the lease, to his damage in the sum of $300. (3) In the alternative he pleaded that the rental value of the pasture for the year 1914 was $300, and by reason of the wrongful seizure of same by defendant, and on account of his refusal to allow Briscoe to pasture same and compelling Briscoe to remove his cattle, plaintiff has been deprived of the said rental value of said pasture for the year 1914. (4) Again, in the alternative, he pleaded that the rental value of his 250 acres for the year 1914 was $300, and the market value of the personal property delivered to him by Briscoe was $300; that under his contract with Briscoe the latter was to turn into the pasture a reasonable number of stock, that is, such a number as the 250 acres would reasonably keep up; that Briscoe decided to turn in 50 head of yearlings, which was a reasonable number, but defendant wrongfully and arbitrarily refused to allow him to keep 50 yearlings in the pasture, and limited him to 25 head, and by reason of such wrongful acts and demands of defendants Briscoe removed all of his cattle from the pasture and canceled the lease contract, requiring plaintiff to return the $300 worth of property given for the lease, and therefore plaintiff was deprived of the rental value of said land for the year 1914 in the sum of $300. (5) Again, in the alternative, if he is not entitled to recover under the preceding plea, then that Briscoe did turn into the pasture about 50 head of yearlings, and they remained therein for about one month, and defendant collected from Briscoe the pasturage on same, for said time, amounting to $27, and converted the same to his own use and benefit; that plaintiff is entitled to recover said pasturage, or at least such pro-

portion thereof as his 250 acres bears to the entire acreage in the pasture.

Defendant answered by general demurrer, special exceptions, and a general denial.

[1] The court instructed a verdict for defendant, and error is assigned upon such ruling. As to the item for rent for the year 1913, we find the following facts proven: Plaintiff was about to rent his land to Albert Finley for the balance of the year, about nine months, for $75; but, after talking to Jackson, Finley declined to enter into the contract. It will be unnecessary to state what occurred between Jackson and Finley, for plaintiff admits that he afterwards leased his land for the balance of the year 1913 to Joe Evans for $75. It is clear he was not entitled to recover on this count in his petition.

[2] The evidence relating to the Briscoe matter, viewed most favorable to plaintiff, is as follows: In March, 1914, plaintiff made a contract with Briscoe to lease him his 250 acres. Plaintiff first testified the lease was to be for the balance of the year. Later he said it was to be for a year, and that the reasonable rental value of the pasture was $75 but Briscoe was to pay him in farm machinery which was of the market value of about $300; that Briscoe was to turn in such number of cattle as plaintiff's land would reasonably "carry"; that 50 head of calves and yearlings would be a reasonable number, and the land would probably "carry" 65. Plaintiff testified Briscoe turned the cattle in and a day or so afterwards told plaintiff he was going to take them out, and did so, and that plaintiff received no lease money for that year. Briscoe testified he only intended to put 50 head of cattle in the pasture, but he failed to get a pasture for others, and actually put in 107 head, and the first time he saw Jackson afterwards he told Jackson how many he had put in, explaining that he had leased the pasture from Graham and would reduce the number to 50 in a few days; that Jackson cursed and said Graham had nothing to do with the pasture, and that Briscoe would have to take out all the cattle except 25 head; that Briscoe insisted he had the right to leave in 50 head, but Jackson was just as insistent that all be taken out except 25 head, contending that even that number was too many, considering the amount of land leased by Briscoe, and told Briscoe he would consult his attorney and see what he could do about it; that Jackson threatened him with a suit and said he would absolutely not allow more than 25 head to go in the pasture, so Briscoe decided that he would have to take them out; that he told Graham of Jackson's objections, and that he could not take the place unless he could run at least 50 head of cattle there, and offered to pay Graham on the lease for the time the cattle had been in the pasture, but Graham would not take

it and said Briscoe did not owe him anything; that by mutual agreement the contract was canceled. On cross-examination he testified that he knew 107 head was too many for him to turn in the pasture; that Jackson did not turn any of his cattle out, nor bother them in any way.

This testimony shows nothing more than a controversy between Jackson and Briscoe with regard to the proper number of cattle to be placed in the pasture by Briscoe. Jackson proposed to see his lawyer for the purpose of sustaining his opinion in a legal manner if he could. Briscoe feared a suit, and decided, if he could not put in 50 head of cattle without a controversy which would probably end in a suit, he did not care for the lease. Graham agreed to cancel the contract. We find nothing in this upon which plaintiff can base a cause of action.

[3] As to the item of $27 received by Jackson from Briscoe, we find the following facts: After Briscoe had offered to pay Graham pasturage for the time his cattle were in the pasture, and Graham had refused to accept it, stating that Briscoe owed him nothing, Briscoe went to Jackson and voluntarily paid him $27. He figured what would be right and tendered a check for the sum to Jackson, who accepted it. Jackson testified he told Briscoe that he did not want any pay for Briscoe's cattle being in the pasture, but Briscoe did not remember whether such statement was made. He testified he knew he owed somebody for pasturage and wanted to protect himself, and so paid Jackson.

We fail to see upon what theory Jackson would be liable to Graham. Briscoe did not pay Jackson any money for Graham. There was no privity between Jackson and Graham, and if Briscoe owed Graham for pasturage he still owes it, for the payment to Jackson would not release him. In fact, however, Graham, in the agreement canceling the lease contract, agreed not to charge Briscoe pasturage for the time the cattle were in the pasture.

We conclude that the court did not err in instructing a verdict for defendant.

Judgment affirmed.