**N. A. ANDRETTA, Appellant,**

v.

**W. E. WEST et al., Appellees.**

**No. 167.**

Court of Civil Appeals of Texas.

Tyler.

April 28, 1966.

Rehearing Denied May 12, 1966.

Edward Kliewer, Jr., Dallas, for appellant.

Gordon R. Wynne, Wynne & Wynne, Wills Point, for appellees.

DUNAGAN, Chief Justice.

The appellant originally instituted this suit against the Superior Oil Company and W. E. West and wife in the 114th District Court of Smith County, Texas, alleging that he was the owner of a one-fourth non-participating royalty interest in a 100 acre tract owned by the Wests, which was then under an oil, gas and mineral lease to Superior Oil Company; and that by virtue of a lieu royalty agreement entered into between Superior and West, Superior had paid West certain monies as royalty and that appellees and Superior were jointly and severally liable to him for one-fourth proportionate part of said monies.

This action was brought in the nature of a suit for debt as a result of the monies paid to the Wests by Superior by virtue of the West-Superior agreement.

The Wests filed their pleas of privilege to be sued in Van Zandt County, the county of their residence. The Wests' pleas of privilege were sustained and such judgment on appeal was affirmed. Andretta v. West, 318 S.W.2d 768, (Tex.Civ.App.) 1958, writ refused, n. r. e. After transfer to Van Zandt County, the court entered an interlocutory decree in favor of Superior Oil Company, following the opinion of the Court of Civil Appeals in the case of Andretta v. West, supra, that plaintiff could not recover against Superior since he had failed to notify Superior of his royalty interest in accordance with the terms of the original lease under which he purchased.

W. E. West and wife owned 100 acres of land in fee. In 1942, they made an oil and gas lease for a ten-year primary term, which Superior later acquired. Subsequent to the lease, the Wests sold a one-fourth non-participating royalty interest in 1943 and appellant later acquired this non-participating interest.

Trial of this case was before the court without the aid of a jury. Judgment was rendered for appellees in which the interlocutory decree theretofore entered on behalf of Superior was made a part of the final judgment.

Appellant, who was plaintiff below, sued W. E. West and wife, Mrs. Willie B. West, and the Superior Oil Company to recover one-fourth of certain payments made by Superior to the Wests in accordance with the West-Superior agreement. Appellant in his brief states that: "(In view of the holding in the earlier appeal of this case involving venue, Andretta v. West, 318 S.W. 2d 768, Tex.Civ.App., 1958, writ ref., n. r. e. on the question of Superior's liability, Appellant hereby abandons his suit against The Superior Oil Company. * * *" Accordingly, the reference in this opinion to "appellees" means only the Wests. The trial court held (1) that the payments in question did not constitute royalty, and (2) that even if such payments were royalty, appellant's claim is barred by the two-year statute of limitation.

All proceedings in this cause have been timely and regular, and this appeal is properly before this court for review.

Pursuant to appellant's request therefor, the trial court made and filed his findings of fact and conclusions of law. The facts in this case are undisputed, therefore it would serve no useful purpose to include said findings of fact and conclusions of law in this opinion.

Appellant, as grounds for his appeal, presents four Points of Error:

"POINT 1.

"The trial court erroneously held that Appellant, the owner of a ¼th interest in the royalty in the West 100 acre tract,

was not entitled to recover from Appellees, the Wests, ¼th of the payments made by The Superior Oil Company to the Wests under the West-Superior Agreement.

### "POINT 2.

"The trial court erroneously held that the payments by The Superior Oil Company to Appellees, the Wests, under the West-Superior Agreement did not constitute royalty.

### "POINT 3.

"The trial court erroneously held that the payments by The Superior Oil Company to Appellees, the Wests, under the West-Superior Agreement were in the nature of delay rentals and not royalties.

### "POINT 4.

"The trial court erroneously held that Appellant's cause of action against Appellees, the Wests, is barred by the two-year statute of limitation."

Appellees, owners of fee simple title to the 100 acre tract of land, on September 4, 1942, executed to George W. Lack an oil, gas and mineral lease thereon. This lease, drawn in routine form, provided for a ten-year primary term and a one-eighth royalty interest. The lease was assigned to Superior Oil Company on September 18, 1942, and will herein be referred to as the "Superior lease."

In answer to requests for admissions, appellees admitted that the Superior lease continued in full force and effect from its date of execution until released by Superior in July of 1957.

No oil or gas has been produced from the 100 acres and there is nothing in the record to indicate that it was capable of producing either oil or gas.

On August 31, 1944, during the primary term of the lease, W. E. West and the Superior entered into an agreement which is the subject of this suit. Appellant was not a party to the agreement, although he had, as shown by the admissions, demanded of Superior that some action be taken under the lease for development and he was advised by Superior that it contemplated no action and offered to farm out the lease to him. It is shown by the testimony of the appellant that he had been engaged in the oil business since 1922 and was thoroughly familiar with the oil business.

The agreement between West and Superior, which we will hereafter refer to as the "West-Superior agreement" made August 31, 1944, was recorded in the deed records of Van Zandt County, Texas, on September 16, 1944, and contains the following provisions:

### "I

"That said Lessee (Superior) will pay lessor (Appellees) a lieu royalty in cash equivalent to one-eighth (⅛th) of the proceeds from the sale of all oil produced and sold from said Groves Well #1 (located on the adjoining tract), beginning with production on and after August 1, 1944, said payments to be based upon actual runs of oil from said well and paid to Lessor herein on or before the 20th day of the calendar month following the production thereof.

### "II

"The said payments to Lessor shall be construed to be royalty payments made to Lessor under the terms of said lease.

### "III

"That in the event said Lessee shall begin operations for the drilling of a well for oil upon the lands herein above described and thereafter diligently prosecute drilling operations thereon, such operations shall be full performance of the terms of said lease and shall relieve Superior of the necessity of paying said lieu royalty to Lessor, based upon oil produced from said Groves well #1 on and after

the first day on which such operations for drilling shall have been commenced by said Lessee upon the land above described.

## "IV

"That anything herein to be contrary notwithstanding, Lessee shall have the right at any time to discontinue the payment of said lieu royalty by surrendering and releasing to said Lessor sai*l* lease in its entirety, which surrender shall be effective immediately upon delivery of same in the United States Mail addressed to Lessor at Canton, Texas, registered, with postage fully prepaid.

## "V

"In the event Lessee shall fail to pay Lessor said lieu, royalty and Lessee shall not have sent Lessor any such quitclaim deed nor commenced such said operation for drilling a well for oil on said lease, the sai*e* lease shall not terminate unless Lessor shall send Lessee at 400 Oil and Gas Building, Houston, Texas, written notice of default, thereof, and thereafter Lessee shall, during the period of thirty (30) days after receipt of such notice, either pay said lieu royalty or to begin operations for the drilling of a well for oil on said leased lands of Lessor, or release said lease to Lessor, as Lessee may elect.

"Insofar as the same may be applicable this Agreement is an amendment of said lease, effective for the sole purpose of maintaining sai*e* lease in full force and effect during the performance of the agreements terms and conditions hereinabove set forth, for the time and in the manner herein provided."

Pursuant to the West-Superior agreement, Superior paid to appellees during the period from August 1, 1944, through May, 1957, the total sum of $27,978.16, none of which was paid to appellant by the appellees or Superior.

Appellant has grouped Points 1, 2 and 3 for discussion in his brief and we will likewise group these Points in disposing of same on this appeal.

Appellees have filed six Counter Points.[1]

■ The West-Superior agreement very definitely states its object in the last paragraph thereof by saying:

"Insofar as the same may be applicable this Agreement is an amendment of

---

**1.**

**COUNTER POINT I.**
The payments made by The Superior Oil Company to Appellees were in accordance with and by virtue of a private contract between the parties for the sole purpose of maintaining an oil and gas lease in full force and effect in the nature of delay rentals and were not royalties paid from production.

**COUNTER POINT II.**
Appellant's non-participating royalty conveyance was passive in its nature and entitled him to participate only in the event of production from the land described in his conveyance, and since, admittedly, there was no production from said lands, he was not entitled to recover.

**COUNTER POINT III.**
The contract between The Superior Oil Company and the Appellees herein was a private contract made only for the benefit of Appellees, and if The Superior Oil Company was indebted to Appellant, it is still indebted, and Appellant would have to pursue his claim against the Superior.

**COUNTER POINT IV.**
The Appellant and Appellees, not having provided in the original non-participating royalty conveyance for Appellant to share in payments made to delay the drilling of a well, the trial court was not authorized to rewrite the contract nor make additions thereto.

**COUNTER POINT V.**
The conveyance by the Appellees to the Appellant was at a time when there was a valid lease on the property, and such lease not having expired during the payment of the delay rental to Appellees, no executive rights ever accrued and there was no trust relation existing between the parties.

**COUNTER POINT VI.**
The trial court correctly held that if Appellant had any cause of action, it was for a debt and was governed by the two-year Statute of Limitation.

said lease, effective for the sole purpose of maintaining saie lease in full force and effect during the performance of the agreements terms and conditions hereinabove set forth, for the time and in the manner herein provided."

We think the purpose of the agreement was to pay for the privilege of delaying drilling by Superior upon the land covered by their lease and to that extent applies as an amendment of Paragraph 4 of the oil, gas and mineral lease held by Superior at the time. The material parts of Paragraph 4 provide:

"If operations for the drilling of a well be not commenced on said land, or any unitized area hereunder on or before the 4th day of September, 1943, this lease shall terminate unless lessee on or before that date pays to the lessor a rental of Two Hundred Fifty and no/100 Dollars which payments shall cover the privilege of deferring *of* commencement of operations for the drilling of a well for twelve months from said date. In like manner and upon like payments during the primary term, the commencement of such operations may be *furhter* deferred for like periods of the same number of months successively. Such rental payments may be made to the lessor by lessee paying or tendering the same to lessor, * * *"

Insofar as this record shows subsequent to the West-Superior agreement, the Superior never paid to the Wests the rental of $250.00 for the privilege of deferring the commencement of operations for the drilling of a well as provided for in Paragraph 4 of the Superior lease, but to the contrary, the record shows that after said agreement Superior paid to the Wests only the monthly sums as provided for in the agreement for the privilege of deferring commencement of operations for the drilling of a well upon the 100 acre tract. This clearly shows the intention of the parties to the West-Superior agreement was for such agreement to be only for the purpose

of paying for the privilege of deferring the commencement of drilling operations on the land involved in this controversy.

It appears also that the West-Superior agreement is applicable to Paragraph 2 of said oil and gas lease as an amendment to the portion thereof that provides:

"This lease shall be for a term of ten years from this date (called primary term) * * *"

because it is without dispute that the Superior lease was maintained in full force and effect long after the ten year period from the date of the lease by virtue of the payments made by Superior to the Wests under the West-Superior agreement.

We do not hold that the provisions of Paragraphs 2 and 4 referred to above of the Superior lease are the only provisions to which the West-Superior agreement may have some application.

The West-Superior agreement was a private agreement and was made only for the benefit of the appellees and Superior and as so expressed within the agreement itself, it was effective for the sole purpose of maintaining the lease in full force and effect for the time and in the manner therein provided.

Appellant seizes upon the term "lieu royalty" as used in the agreement, but such term did not add anything to the agreement, nor make it production from the 100 acre tract at all, and calling an interest an overriding royalty or a lieu royalty would not be conclusive of its true status.

The Supreme Court in Delta Drilling Company v. Simmons, 161 Tex. 122, 338 S.W.2d 143, 146, speaking through Associate Justice Greenhill, said:

" * * * Of course, whether the interest created or reserved in an instrument is an overriding royalty or something else depends upon the true nature and the wording of the particular conveyance which gives rise to the interest. Calling

an interest an overriding royalty would not be conclusive of its true status. * * "

Simply because the Superior and Wests used the word "royalty" did not make the delay rentals royalty unless they really were.

The royalty deed from West, under which the appellant holds, contains the following provisions:

"* * * have granted, sold, conveyed, assigned and delivered, and by these presents do grant, sell convey, assign, set over and deliver unto the said grantee an undivided one-fourth interest in and to all of the oil royalty, gas royalty, * * * *that may be produced and mined from the following described lands situated in the County of Van Zandt, State of Texas,* to-wit: * * * " (Emphasis ours).

This was followed by a description of the 100 acre tract of land involved in this controversy, being the same land described in the oil and gas lease held by Superior. The instrument further provides:

"Said lands or portions thereof, being now under oil and gas lease executed in favor of the owner thereof; it is understood and agreed that this sale is made subject to the terms of said lease, but covers and includes the same percent interest as first hereinabove named, of all the oil royalty and gas royalty * * * due and to be paid under the terms of said lease."

It also provides:

"And it is further understood and agreed that notwithstanding, the grantee does not by these presents acquire any right to participate in the making of future oil and gas mining leases on the portion of said lands not at this date under lease, or of participating in the making of future leases, should any existing or future lease for any reason become cancelled or forfeited, nor of participating in the bonus or bonuses which grantor herein shall receive for any future lease, *nor of participating in any rental to be* *paid for the privilege of deferring the commencement of a well under any lease now or hereafter;*" (Emphasis ours).

In the case of Griffith v. Taylor, 156 Tex. 1, 291 S.W.2d 673, the Supreme Court sets at rest the definitions of "bonus," "rental," and "royalty." In quoting from the Supreme Court of Louisiana and adopting its words, the court used this language:

"* * * 'The words "bonus", "rental", and "royalty" used in connection with oil and gas leases are to be construed in the ordinary and popular sense, "bonus" meaning the cash consideration paid or agreed to be paid for the execution of the lease, "rental" being the consideration for the privilege of delaying drilling operations, and "royalty" being a share of the product or proceeds therefrom reserved to the owner for permitting another to use the property.' * * * "

Applying the law pronounced in the Griffith case to the West-Superior agreement, the payments from Superior to West which were for the sole purpose of delaying or deferring drilling operations on the West 100 acre tract and maintaining the lease in full force and effect, were "rental payments."

The Texarkana Court of Civil Appeals held in Andretta v. West, supra, 318 S.W.2d page 772:

"* * * Appellant casts his petition in the form of an (a) action upon debt arising out of a contract; (b) and pleads the contracts upon which he relied to establish a recovery; and (c) prays for a joint and several judgment. If Superior is indebted to Andretta, it is because of the terms of the original mineral lease construed in connection with a lieu royalty contract. If the Wests are indebted to him it is because of their violation of the warranty of their deed conveying ¼ of the royalty construed in connection with the lieu royalty contract. * * * "

Surely the warranty has not failed. Appellant sues for debt, and if anyone owes him a debt, it is the Superior Oil Company, not the Wests.

The Wests made a private contract with the Superior and as said by the Supreme Court in Dickason v. Mathews, Tex.Civ. App., 335 S.W.2d 658, at page 661:

" * * * 'Parties are presumed to contract for themselves. It follows that a contract will not be construed as having been made for the benefit of a third person unless it clearly appears that such was the intention of the contracting parties. 17 C.J.S., Contracts, § 519, p. 1129.'

" * * *

" ' "It is not our purpose to hold that a contract may not be made for the benefit of a third person, although such person may not be specifically mentioned, but we do hold that a contract to have such effect, must clearly evidence a distinct intention to benefit such third person." Irwin's Bank v. Fletcher Sav. & Trust Co. (1925) 195 Ind. 669, 692, 145 N.E. 869, 876, 146 N.E. 909.' "

The non-participating royalty interest acquired by appellant was passive in its nature and entitled him to participate only in the event of production from the land described in his conveyance, nothing more. If he wanted anything more, or desired something from the Superior, he should have demanded it of them. If they owed him anything, then they still owe him, but not the Wests. The Wests were paid what Superior contracted to pay them. Such is the expression in Evans v. Opperman, 76 Tex. 293, 13 S.W. 312, wherein the court, in discussing the payment of insurance and speaking through Judge Gaines, said:

"There was a demurrer interposed to the petition, and it was overruled by the court. This action of the court presents a question we have found it difficult to determine. From the face of the petition, it would seem that the ground of complaint is that the defendants had collected the whole of the insurance money, and that the plaintiff is entitled to an equal share, namely, one-tenth, of it. Admitting all this to be true, it is not clear that any injury has been done to the plaintiff. If he was entitled to a part of the money, the insurance companies still owe it to him, and the action of the defendants have not deprived him of any right. If they had held the legal title to the money, and he had owned a beneficial interest in it, his right to sue them would have been clear. But, in the absence of any fiduciary relation, or any privity of contract, between the parties, and of the deprivation of any right which he had, it is difficult to see that he has a cause of action against them, according to the facts stated in the petition. * * *"

To the same effect is the case of Patton v. Mitchell, 13 S.W.2d 146, 148, (Tex.Civ. App.) 1929, n. w. h., wherein the court said:

"We are further of the opinion that Mitchell cannot recover against Patton because there is no privity between them with reference to the fund in issue. Graham v. Jackson (Tex.Civ.App.) 189 S.W. 551.

" 'Where there are two claimants for the same money and one of them is recognized as being entitled to it by the person from whom it is due and is paid, the other cannot sue him to recover the money for the reason that having received the money under a claim of right in himself, the law will not imply any contract or promise by him to hold the money for the use of the other claimant or to pay it over to him and therefore, there is not, under the circumstances, any privity of contract on which to found the action.' 41 C.J. 41."

Appellant relies upon the case of Schlittler v. Smith, 128 Tex. 628, 101 S.W.2d 543, and the case of Morriss v. First Nat. Bank of Mission, Tex.Civ.App., 249 S.W.2d 269. These cases were dealing with a contract providing for mineral royalty within the lease itself and not with the situation where-

in there was a subsequent agreement and a subsequent contract made between different parties and for another purpose, and we do not believe these cases are applicable to the case at bar.

■ The Wests were paid by the Superior under a private contract to the appellees, who had a claim of right to it and were not in any sense of the word holding the money for the use of any other claimant, but only for the benefit of the appellees, themselves.

At the time of the execution of the original royalty instrument between the parties, the land described was under an oil and gas lease held by the Superior Oil Company. That lease stayed in existence during the entire time of the payments made to the appellees by the Superior Oil Company.

This lease having never been cancelled or forfeited, no executive rights ever inured to the benefit of appellees, and they were not called upon to execute them until such rights came into existence. Appellees were not in a position of trustees, nor bound to protect the interest of the grantee and his assigns in the royalty conveyance.

If the parties desired to participate in the payments under the oil and gas lease for the deferring of commencement of drilling operations, they could have very easily written into the instrument the same terms as were contained in the royalty conveyance under consideration in Masterson v. Gulf Oil Corporation, 301 S.W.2d 486, (Tex.Civ. App.) 1957, writ refused, n. r. e.

In that conveyance, the grantors excepted from the conveyance a one-sixteenth royalty interest and one-half of any bonus or rentals paid in lieu or in place of that royalty interest. The court held under such a reservation that they were not entitled to any monies paid in lieu of that royalty. There was no such language in the present conveyance to appellant, but, on the contrary, the conveyance itself provided:

"Nor of participating in any rental to be paid for the privilege of deferring the commencement of a well under any lease, nor or hereafter."

This language is broad enough to cover any monies paid to the appellees to defer any drilling upon the property under lease, and by the provisions of the instrument itself, the grantee in said instrument, or appellant, would have no interest in those payments.

As said by Judge Pope in Campbell v. Dreier, 382 S.W.2d 179, (Tex.Civ.App.) 1964, writ refused, n. r. e., quoting from the case of Sellers v. Breidenbach, 300 S.W. 2d 178, 179, (Tex.Civ.App.) 1957, writ refused:

"* * * 'The parties could have placed in their royalty deed a shut-in gas well provision, if they had desired to do so, but we find no such provision in this deed.' Archer County v. Webb, 161 Tex. 210, 338 S.W.2d 435; * * *" See also Midwest Oil Corporation v. Lude, 376 S.W.2d 18, 22, (Tex.Civ.App.) 1964, writ refused, n. r. e.

If the parties to the royalty deed under consideration had wished or agreed that the grantee was to share in any payments of whatever nature, they could have written into the contract any terms and conditions with reference thereto, but not having so agreed, the court could not re-write the contract for appellant's benefit. Our Supreme Court has definitely followed this line of thought in Archer County v. Webb, supra, wherein they followed the opinion by the Circuit Court of Appeals in Scott v. Union Producing Company, 5 Cir., 267 F.2d 469, holding that a grantee in an instrument could have additional rights ingrafted by the court on his conveyance, but later said:

"* * * 'It is the mineral deed, not the lease, which should have contained the provision securing to the term mineral owners the benefit of the shut-in gas well and provision.'"

It is also held in Campbell v. Dreier, supra, that:

"The word 'production' as used in a term royalty deed means actual production. Holchak v. Clark, Tex.Civ.App., 284 S.W.2d 399. If shut-in royalty is relied upon as substitute production applicable to the royalty deed, provision for it must be found in the royalty deed and not in the overlying lease. * * *"

We have concluded that the payments made to the appellees herein by the Superior Oil Company were paid for only one purpose, and that was to delay the drilling of a well upon these premises, and regardless of the language of terms used by the parties, it came within the exception of the royalty conveyance itself, which provided in plain language that the grantee in said instrument should not participate in any rental to be paid for the privilege of deferring the commencement of a well under any lease, not confining the restrictions to any future lease, but using the language "now or hereafter."

We think this language could have no other meaning than that any monies paid to the grantor or appellees, under the lease in existence at the time of the execution of the royalty conveyance for the sole and only purpose of delaying the drilling of a well, were not to be shared by the grantor and the grantee. The language of the instrument itself forecloses the idea that the grantee in said instrument, or his assigns, were to have any interest in any rentals paid to defer the development or drilling of a well on the tract of land in controversy.

Appellant has quoted from an article " 'In Lieu' Royalty Agreements in the Oil Industry" 3 Houston Law Review 84, written by Leslie Moses, wherein he makes the statement that:

"The in lieu royalty should not be confused with annual delay rental payment. The latter is not a royalty because it is not based on production. Delay rentals do not relieve the lessee from the duty of drilling an offset well if the oil or gas is being drained from under the lessor's land."

In the case at bar, there are no pleadings or any evidence that at any time during the existence of the Superior lease or the West-Superior agreement that oil, gas or any other minerals were being drained from under the 100 acre tract of land in controversy.

The conveyance by the appellees to the appellant was at a time when there was a valid lease on the property, and such lease not having expired during the payment of the delay rental to appellees, no executive rights ever accrued and there was no trust relation existing between the parties.

There are some expressions by our Supreme Court notably in Schlittler v. Smith, supra, which announce the rule that the holder of an executive right under a mineral reservation owed a duty to the non-participating royalty owner of protecting his rights in the execution of any leases under the executive right. But, as said by Judge Pope in Campbell v. Dreier, supra, " * * * The existence of a duty to protect the royalty owners does not, however, mean that an owner or holder of executive rights has the additional and new power to change the terms of outstanding royalty deeds."

Under the provisions of the royalty deed, until the Superior lease became cancelled, or forfeited, the appellees were not the holders of any executive rights. Consequently, not having the executive rights in making the agreement with the Superior Oil Company for the delay of drilling, appellees could not have been acting as trustees for the appellant, and until said lease, which was in existence at the time of the making of the royalty conveyance was forfeited or cancelled, West did not owe the appellant any fiduciary duties, nor was he under any fiduciary duties to the grantee in the royalty conveyance, or to his assigns.

In the words of Judge Hutcheson in Scott v. Union Producing Company, supra, it is the mineral deed and its provisions that must be looked to, and the mineral deed in providing for any duties owing by the appellees to appellant, the court would not be authorized to insert into the agreement any provisions or agreements that had been omitted. Appellant's Points of Error Nos. 1, 2 and 3 are overruled.

In view of the disposition we have made of this case, under appellant's Points of Error Nos. 1, 2 and 3, it is unnecessary for us to discuss appellant's Point of Error No. 4.

The judgment of the trial court is affirmed.