AMY L. CECIL V. BILL DOLLAR ET AL.

No. A-1963. Decided February 16, 1949.
Rehearing overruled March 30, 1949.
(218 S. W., 2d Series, 448.)

*Farrow & Johnson* and *Urban Farrow,* of Carrizo Springs, and *Chas. D. Bates, Jr.,* of Cotulla, for petitioner.

The court erred in failing to hold that as Dollar had agreed to pay off the mortgage, which would discharge Cecil mineral interest of the indebtedness secured thereby, he, Dollar, is estopped to rely upon his failure to fulfill his contractual obligations and assert title to said mineral interest adverse to Cecil, but should be charged with such interest as a trustee under a construction trust. Hall v. Miller, 147 S. W. (2d) 266; Burney v. Burney, 261 S. W. 182; Davis v. Davis, 49 S. W. 726; 23 Am. Jur. 754.

*Wilson & Hargrave* and *Edward Hargrave,* of Cotulla, for respondent.

The Court of Civil Appeals correctly held that Dollar was not estopped by his actions, and did not hold as trustee under a constructive trust. Chicago, T. & M. C. Ry. Co. v. Titterington, 84 Texas 218, 19 S. W. 472; Hendrix v. Gabrysch, 190 S. W. (2d) 516; Rapid Transit Co. v. Smith, 98 Texas 553, 86 S. W. 322.

MR. JUSTICE TAYLOR delivered the opinion of the Court.

This is a trespass to try title action. The contest between Mrs. Cecil, petitioner, and Bill Dollar and those claiming under him, respondents, involves the title to one-half of the oil, gas and other minerals underlying a 640-acre tract of land in La-Salle and Dimmit Counties, Texas. The judgment of the trial court in favor of Dollar's administrator and heirs, Dollar having died during the pendency of the suit, was reluctantly affirmed by the Court of Civil Appeals under the view the principal question was no longer an open one. 218 S. W. (2d) 445.

Petitioner's application for writ of error was granted on point Two. The complaint is that the courts below failed to hold that inasmuch as respondent Dollar had agreed to pay off the mortgage which would have cleared Mrs. Cecil's mineral interest of the indebtedness secured thereby, respondents are estopped to rely upon his failure to fulfill his contractual obligation, and to assert an adverse title to the mineral interest derived from his purchase at the trustee sale brought about about by his own default; and, that the resepondents should be charged as trustees under a constructive trust.

The evidence is for the most part documentary and undisputed. The facts, as stated by the Court of Civil Appeals, and agreed to by the parties as correct, are as follows: On May 11, 1923, W. M. Cecil, the deceased husband of Amy L. Cecil, petitioner, executed a deed of trust on the land involved, including the mineral estate, to secure a $2,000.00 note to G. R. Newman, due on or before five years after its date. On August 27, 1924, Cecil conveyed the land to A. L. Blount, who assumed the Newman indebtedness as part of the consideration. One-half of the mineral interest was expresesly reserved to the grantor, Cecil. On August 10, 1925, Blount conveyed the premises less the one-half mineral interest to Dollar, who also expressly assumed payment of the Newman indebtedeness. On January 2, 1931, Dollar executed an extension of the indebtedness to Newman, extending payment of the note for five years from January 12, 1931. This extension was made without the knowledge or consent of

Cecil. On or about January 5, 1934, about thirty days prior to the date of the trustee's sale, Dollar not only was able to borrow, but did borrow $1,100.00 from J. L. Bohannon for the purpose of buying in the land at the sale. On February 6, 1934, upon default of the payment of the Newman note as extended, a trustee's sale was held at which the land was bought in by Dollar, and a trustee's deed was executed to him. The deed recited that the note had been extended; that the payee had refused to pay the interest installments due, and that the holder had declared the entire note due and requested the trustee to sell the property.

There is no question regarding the regularity of the trustee sale. The deed from the trustee to Dollar purported to convey the described property, and to bind W. M. Cecil, his heirs and administrators by general warranty to Dollar, his heirs and assigns.

■ We agree with the Court of Civil Appeals and the trial court that the extension agreement of January 2, 1931, bound the Cecil mineral interest notwithstanding he did not join in the agreement. Texas Land and Mortgage Company v. Cohen, 138 Texas 464, 159 S. W. (2d) 859.

■ Mrs. Cecil's principal complaint is, as already stated, with regard to the method by which Dollar acquired legal title to the Cecil mineral interest. It will be noted from the above facts that Dollar, notwithstanding he had sufficient funds with which to pay the indebtedness against the land, to remove from it the encumbrance which he had assumed, by breaching his agreement and refusing to pay interest installments on the note, brought about a trustee's sale at which he purchased the property and acquired legal title to all the mineral estate underlying the entire section, whereas prior to his purchase he had title to only one-half of the minerals. This Dollar did with intent to acquire the Cecil mineral interest. Respondents contend that at most there was only a breach of contract, and that since this suit was not instituted by them until 1947, any claim of Mrs. Cecil is barred by the four-year statute of limitations, Art. 5529, Vernon's Ann. Civ. Stats; and also that Mrs. Cecil is guilty of laches. The parties stipulated that neither Mr. nor Mrs. Cecil had any knowledge of the foreclosure proceedings culminating in the Trustee's sale on February 6, 1934, until the fall of 1946 when they received a letter from the attorneys of Dollar asking for a quitclaim deed to the mineral interest. It is obvious from the fact recited in the stipulation that there is

no ground for the application of the doctrine of laches. It is apparent also, that, respondents cannot rightly claim title by limitations.

■ It is generally recognized that it would be inequitable to permit one co-tenant, without the consent of the others, to buy in an outstanding adversary claim to the common estate and assert it for his exclusive benefit. Roberts v. Thorn, 25 Texas 728, 78 Am. Dec. 582; Johnston v. Johnston (Civ. App.), 204 S. W. 469, writ refused; Wiggins et al v. Holmes et al (Civ. App.), 39 S. W. (2d) 162, writ refused; Annotations, 6 A. L. R. 297; 54 A. L. R. 874; 85 A. L. R. 1535; 14 Am. Jur. p. 120 Cotenancy, Sec. 51; 62 C. J. p. 461, Tenancy in Common, Sec. 82; 2 Tiffany, Real Property, Secs. 463-466, pp. 287-295. In Roberts v. Thorn, supra, Chief Justice Wheeler said:

"* * * it seems to be well settled, that joint tenants and co-parceners stand in such confidential relations in regard to one another's interest, that one of them is not permitted in equity to acquire an interest in the property hostile to that of the other; and, therefore, a purchase, by a joint tenant or co-parcener, of an incumbrance on the joint estate, or an out-standing title to it, is held at the election of his co-tenants with-in a reasonable time, to inure to the equal benefit of all the tenants upon condition that they will contribute their respective ratios of the consideration actually given. The same equity has been considered as subsisting between tenants in common, where they hold under the same instrument. * * * 'tenants in common probably are subject to this mutual obligation, only where their interest accrues under the same instrument, or act of the par-ties or of the law, or where they have entered into some engage-ment or understanding with one another; for persons acquiring unconnected interest in the same subject, by distinct purchases, though it be under the same title, are probably not bound to any greater protection of one another's interests, than would be re-quired among strangers.' "

In the present case the foregoing rule is applicable with respect to the encumbrance on the land, payment of which Dol-lar assumed. The assumption agreement showed his promise to pay the debt against the land, his knowledge of his relation-ship to the Cecil mineral interest and the recognition by him of his duty to his co-tenant, Cecil, to remove the encumbrance.

Dollar, by his agreement with Blount, his predecessor in title, became primarily liable to pay the indebtedness. The

agreement was concerned with the acquisition of a title free from the encumbrance then burdening the property. There was a closely connected interest between the parties, for the Cecil and Dollar interests were both subject to the mortgage.

The rule stated above is applicable to a purchase at a fore-closure sale, or trustee's sale under a deed of trust. Magruder v. Johnston (Civ. App.), 233 S. W. 665, writ refused; Tiffany, Real Property, 3rd ed., Sec. 464, p. 290. At the time of Dollar's purchase at the trustee sale a right existed in Mrs. Cecil under the rule to share in the benefit of the sale. Clearly there was not only no right on behalf of Dollar to recover a contribution under the facts, but it would be unconscionable to allow him to acquire the Cecil interest and thus unjustily enrich himself.

Where the above rule is applicable, the co-tenant who pur-chases an outstanding title or encumbrance acquires no title to the interest of his co-tenant by the purchase; rather, it inures to the benefit of all co-tenants. Since no right to contribution existed on behalf of Dollar, it must be concluded that Dollar by his purchase at the trustee sale acquired no better equitable title than he had prior to the sale; and, of course, could trans-mit no better title.

■ This Court in the recent case of Connecticut General Life Ins. Co. et al v. John Bryan Bryson, Jr., 148 Texas ____, 219 S. W. (2d) 799, had occasion to approve a rule that rests upon the same principle as the one applied here. Chief Justice Hick-man, speaking for the Court, said of ther espondent's theory in that case:

"That theory is based upon the rule applicable in ordinary cases of life tenant and remaindermen that the former owes the duty to the latter to pay the taxes, and that if he breaches that duty and the property is sold for taxes, and he, at the tax sale or thereafter, acquires title to the property, he hold same for the benefit of the remaindermen. *The rule rests upon the equitable principle that no one should profit by his own default.*" (Emphasis added.)

Dollar rested under the italicized principle. Respondents as-serted, however, that this case is controleed by Talley v. Hows-ley et al, 142 Texas 81, 176 S. W. (2d) 158. In that case a former co-tenant sought to impose a constructive trust upon property sold at a trustee's sale to a stranger to the title and thereafter reacquired by the defaulting co-tenant who had suf-

fered the sale to be made. As there was no showing in that case that the former co-tenant had benefited from his default, the decision is not in conflict with the principle applied here. See also 54 A. L. R. 874 at p. 884.

Mrs. Cecil's mineral interest was relieved of the encumrance by Dollar's purchase at the trustee's sale as effectively as if he had paid the debt according to his agreement. See in this connection, 2 Tiffany, Real Property, 3rd ed., Sec. 464, at p. 291, and Sutton v. Sutton, 211 N. C. 472, 190 S. E. 718. It follows from the above discussion that it is immaterial that the contractual four-year limitation period has elapsed since the foreclosure proceeding.

For the reasons stated above, the judgments of the trial court and Court of Civil Appeals are reversed, and judgment is here rendered for Mrs. Cecil.

Opinion delivered February 16, 1949.

Rehearing overruled March 30, 1949.