Mabel **DICKASON**, Executrix of the Last Will and Testament of Catherine M. O'Dell, Deceased, Eugene O'Dell and wife, Bess O'Dell, Merta Williamson, Kathryn Wiolland, and A. G. Blauner, Appellants,

v.

Virgil **MATHEWS** and O. W. Mathews, each individually and as Independent Executor of the Will and Estate of L. W. Mathews, Deceased, Nova Foote and husband, C. D. Foote, Evelyn Couch and husband, Ted Couch, Appellees.

No. 6957.

Court of Civil Appeals of Texas.

Amarillo.

April 25, 1960.

Rehearing Denied May 23, 1960.

Underwood, Wilson, Sutton, Heare & Berry, Amarillo, for appellants.

Sanders, Scott, Saunders, Brian & Humphrey, Amarillo, Linn & Helms, Spearman, for appellees.

## NORTHCUTT, Justice.

This is a suit brought by appellees to remove cloud from their title to a one-fourth mineral interest in the land in controversy. Trial below was to the court without jury and this appeal is from a summary judgment rendered in favor of appellees and against the appellants, and denying summary judgment to the appellants.

It was stipulated and admitted that the common source of the title as to the land in controversy was Lon C. McCrory. On April 18, 1918, McCrory and wife, as such owners, conveyed the lands to H. C. King, reserving in such conveyance a Vendor's Lien to secure the payment of certain notes. On May 10, 1919, and on September 9, 1922, H. C. King executed deeds of trust to The Federal Land Bank of Houston securing certain notes including the notes owed to McCrory which deeds of trust included all the land together with the mineral estate thereunder. On March 30, 1926, H. C. King conveyed the land together with the mineral interest to Ben Russell with the Grantee expressly assuming and agreeing to pay the indebtedness to The Federal Land Bank. On June 1, 1926, Ben Russell conveyed to Arthur O'Dell an undivided one-eighth interest in the oil, gas, coal and other minerals under such land subject to, but Grantee not assuming, The Federal Land Bank indebtedness. On that same day Ben Russell conveyed to H. G. Blauner an undivided one-eighth interest in the oil, gas and other minerals under the land subject to, but Grantee not assuming, The Federal Land Bank of Houston indebtedness. On March 10, 1930, Ben Russell conveyed such lands to W. S. McNabb and W. G. McNabb, Grantees taking subject to the outstanding mineral interest above mentioned and Grantees expressly assuming and agreeing to pay The Federal Land Bank of Houston indebtedness. On April 3, 1930, W. G. McNabb and W. S. McNabb conveyed such lands to W. E. Cooke and L. W. Mathews, Grantees taking subject to the outstanding mineral interest above mentioned, and Grantees expressly assuming and agreeing to pay The Federal Land Bank of Houston indebtedness. On October 13, 1931, W. D. Cooke conveyed all his undivided interest in such lands to L. W. Mathews subject to the outstanding mineral interest with L. W. Mathews expressly assuming and agreeing to pay the indebtedness to The Federal Land Bank of Houston. On September 15, 1934, L. W. Mathews conveyed such lands to H. G. Provines subject to the outstanding mineral interest, and Grantee expressly assuming The Federal Land Bank of Houston indebtedness. Thereafter, H. G. Provines defaulted in the payment of certain taxes and also the payments due to The Federal Land Bank of Houston, and on May 27, 1942, The Federal Land Bank of Houston recovered judgment against all of the parties interested in both the mineral rights and also the lands involved, establishing its debt and foreclosing its lien on said land as against all of the parties. The court ordered the land sold and on September 8, 1942, the Sheriff of Sherman County, Texas, where the land was located, pursuant to the court's order of sales executed his deed conveying all of such land together

with the mineral interest to L. W. Mathews, one of the defendants to the above described cause. Appellees are the successors in interest to L. W. Mathews as to the lands in controversy and his interest in the minerals and these appellants are the successors in interest to the mineral interest of O'Dell and Blauner. After Mathews purchased the property under such order of sale, he thereafter on the first day of September, 1944, sold all of the land to Kenneth Kendrick for a certain consideration. In the deed from Mathews to Kendrick he also conveyed unto Kendrick an undivided one-half interest in all of the oil, gas, and minerals in, under, on, and that may be produced from the mentioned lands and the Grantor Mathews reserved unto himself the remaining one-half interest in said oil, gas, and other minerals in, under, on, and that may be produced from the lands. It was further provided in said deed that it was understood in making the conveyance of oil, gas, and other minerals unto Kendrick, that such portion so conveyed to him is the full one-half of said minerals, and then provided, "and the one-half retained by the said L. W. Mathews is subject to any claims, or prior sales and conveyances of minerals to Arthur O'Dell, or other persons appearing of record in the deed records of said Sherman County, Texas."

Both the appellees and appellants filed motions for summary judgment. The trial court granted appellees' motion for summary judgment granting them the mineral interest theretofore held by O'Dell and Blauner, and held against the appellants on their motion for summary judgment. From this judgment the appellants have perfected this appeal.

 Appellants present this appeal upon 12 assignments of error, and present the first 10 points together. We think the matter to be determined by these 10 points of error deal solely with the effect of the assumption by Mathews of The Federal Land Bank of Houston indebtedness. The Federal Land Bank held a deed of trust upon all of the land in question including all of the mineral interest. Russell purchased all of the land including the mineral interest and assumed and agreed to pay the indebtedness to The Federal Land Bank of Houston. Russell then sold the one-fourth mineral interest subject to The Federal Land Bank of Houston's indebtedness. As to the other transfers, Mathews finally purchased the land in question, subject to the outstanding mineral interest, and assumed and agreed to pay the bank's indebtedness. In 1934 Mathews conveyed the land to Provines, subject to the outstanding mineral interest, and Provines expressly assumed the banks' indebtedness.

Appellants contend Cecil v. Dollar et al. 147 Tex. 541, 218 S.W.2d 448, 449 is directly in point here and that the judgment of the court below should be reversed and judgment rendered for appellants. We agree with the holding in the case of Cecil v. Dollar, supra, but do not think it is in conflict with the holding of the trial court in this case. The Court there stated:

"Mrs. Cecil's principal complaint is, as already stated, with regard to the method by which Dollar acquired legal title to the Cecil mineral interest. It will be noted from the above facts that Dollar, notwithstanding he had sufficient funds with which to pay the indebtedness against the land, to remove from it the encumbrance which he had assumed, by breaching his agreement and refusing to pay interest installments on the note, brought about a trustee's sale at which he purchased the property and acquired legal title to all the mineral estate underlying the entire section, whereas prior to his purchase he had title to only one-half of the minerals. This Dollar did with intent to acquire the Cecil mineral interest."

We believe the reasoning in the Cecil v. Dollar case sustains the holding of the trial court in this case. We certainly agree with the equitable principal that no one should profit by his own default. We fur-

ther agree that it would be inequitable to permit one cotenant without the consent of the others to buy in an outstanding adversary claim to the common estate and assert it for his exclusive benefit. In this case, Mathews had sold all of his interest in the property some eight years prior to the foreclosure, and it was not Mathews that made the default and brought about the foreclosure. Provines had assumed the payment of the bank's indebtedness and had defaulted in the payment of the same, and had also failed to pay the taxes for several years. Mathews was not a cotenant with appellants at the time of foreclosure. Neither is there anything in this record to show Mathews ever did anything wrongful for the purpose of defeating appellants of their mineral interest. Appellants' mineral interest was at all times subject to the mortgage lien. When Mathews originally purchased the real estate he assumed the indebtedness, and took the property subject to the appellees' mineral interest but did not in any manner make the agreement for the benefit of the parties holding the mineral interest. The owners of the mineral interest did not assume the payment of the bank's indebtedness but did take the mineral interest subject to the indebtedness. When Mathews assumed the indebtedness he did not place the appellants in any different position than they were in before as their interest was subject to the bank's indebtedness when they purchased the same, and they were not parties to the purchase of the property by Mathews, and the assumption was not for their benefit but for the bank. Judge Critz stated in the case of Citizens Nat. Bank in Abilene v. Texas & P. Ry. Co. et al., 136 Tex. 333, 150 S.W.2d 1003, 1006:

"Parties are presumed to contract for themselves. It follows that a contract will not be construed as having been made for the benefit of a third person unless it clearly appears that such was the intention of the contracting parties. 17 C.J.S., Contracts, § 519, p. 1129."

See also the case of Harvey v. Lowry, 204 Ind. 93, 183 N.E. 309, 311, by the Supreme Court of Indiana, where it is stated:

"It was a contract for the benefit of Anderson and not for the benefit of the appellant. In order for a person who is not a party to a contract to enforce provisions for his benefit it is necessary that the actual parties intended the provisions to be for the benefit of this third person.

" 'It is not denied that a third person, for whose declared benefit a contract was made, may sue to enforce the same. But it is only those whom the contract expressly declares are the beneficiaries and real parties in interest, as when the obligation runs to and is for the benefit of a designated third person or class. In such cases the promisee is taken to be the mere agent or trustee of the designated actual beneficiary.' Reynolds et al. v. Louisville, etc., Ry. Co. (1895) 143 Ind. 579, 629, 40 N.E. 410, 426.

" 'It is not our purpose to hold that a contract may not be made for the benefit of a third person, although such person may not be specifically mentioned, but we do hold that a contract, to have such effect, must clearly evidence a distinct intention to benefit such third person.' Irwin's Bank v. Fletcher Sav. & Trust Co. (1925) 195 Ind. 669, 692, 145 N.E. 869, 876, 146 N.E. 909.

"As indicated by the foregoing excerpts, a 'third party' does not gain the right to sue under a contract merely because he may derive an incidental benefit from the performance of the promisor. *Consequently, we conclude that the appellant in this case has no contractual claim against Lowry by reason of the personal liability assumed by Lowry by his covenant in the deed.*" (Emphasis ours.)

We overrule appellants' first 10 points of error.

■ By appellants' 11th and 12th assignments of error they contend the trial court erred in holding that the appellees did not ratify, confirm and recognize the mineral interest owned by appellants and that they were not estopped to deny the solemn recitation contained in the warranty deed from Mathews to Kendrick. That portion of the deed from Mathews to Kendrick which is involved in these two points of error is as follows:

"* * * and, in addition, and as part of the consideration for this deed, grantors also convey unto the said Kenneth Kendrick an undivided one-half interest in and to all of the oil, gas and minerals in, under, on, and that may be produced from the above lands; and grantor, L. W. Mathews reserves unto himself the remaining undivided one half interest in said oil, gas and other minerals, in, under, on and that may be produced from said lands, it being expressly understood in making this conveyance of oil, gas and other minerals unto the said Kenneth Kendrick, that such portion so conveyed to him is the full one half of said minerals, and the one half retained by the said L. W. Mathews is subject to any claims, or prior sales and conveyances of minerals to Arthur O'Dell, or other persons appearing of record in the deed records of said Sherman County, Texas."

We think it is clearly the meaning of this paragraph that Mathews was insuring Kendrick that he was receiving one-half of the mineral interest. Mathews reserved unto himself the remaining one half. It is the estate or interest of the mortgagor that is sold; and the sale passes the title or estate to the purchaser. The sale under the foreclosure was made because of the default of Provines in failing to pay the indebtedness under the terms of the deeds of trust and also the failure to pay certain taxes. Mathews was under no obligation to pay the taxes as he had no interest in any of the property when the taxes became delinquent. It is stated in Woldert et al. v. Skelly Oil Co. et al., Tex.Civ.App., 202 S.W.2d 706, 709 (writ denied NRE) as follows:

"Furthermore, a stranger to a deed, on the theory of estoppel may not establish his title by recitals in such deed. Hart v. Meredith, 27 Tex.Civ.App. 271, 65 S.W. 507; Fowler v. Texas Exploration Co., Tex.Civ.App., 290 S.W. 818; 31 C.J.S., Estoppel, § 37, p. 213, § 46, p. 226. The following pertinent excerpt is taken from Gilcrease Oil Co. v. Cosby, 5 Cir., 132 F.2d 790, 793:

" 'As to this, it is well settled that title to real property cannot be acquired by estoppel, especially where it is alleged to flow from deeds and transactions to which the one pleading it was not a party. * * * Plaintiff must stand or fall upon the strength of its own title. (Authorities cited.)' "

Mathews had not claimed any interest in the land or mineral interest for eight years before the foreclosure but was made a party defendant to the foreclosure suit as were the appellants. Blauner did not own the mineral interest at the time of the foreclosure by The Federal Land Bank. The judgment of foreclosure was against the interest of appellants and also Mathews, and they did not in that foreclosure appear and protect their interest, and it was a final judgment, and when Mathews bought the property at said sale he bought what estate The Federal Land Bank had. The bank's interest was the land and mineral rights. Consequently, the appellants were strangers to the title and, could not recover by virtue of any recitals in the deed from Mathews to Kendrick. But they had to rely upon their own title and not in what was stated in the deed of Mathews to Kendrick. Appellants' points of error 11 and 12 are overruled.

Judgment of the trial court is affirmed.