Hardy **RADFORD** et al., Appellants,

v.

Johnnie Radford **COKER** et al., Appellees.

No. 5375.

Court of Civil Appeals of Texas, Waco.

Feb. 20, 1975.

Rehearing Denied March 20, 1975.

Bartlett & Hand, Marlin, for appellants.

Dunnam & Dunnam, Waco, for appellees.

HALL, Justice.

Plaintiffs' purpose by this suit is the recovery of title to an undivided one-half interest in 80 acres located in Falls County. The plaintiffs are the children and certain grandchildren of Hardy Radford's marriage to his first wife, Sallie. The defendants are Hardy's second wife, Rosa, and the children born of this second marriage. Jury trial resulted in a judgment for the plaintiffs, and the defendants appeal. We affirm.

With but few exceptions, the proof is undisputed. Hardy and Sallie Radford were husband and wife on November 20, 1918. On that day they purchased the eighty acres in question as their community property for $2,606.50, payable in part by their twelve promissory notes in the amount of $200 each, with one note payable each year thereafter for twelve years beginning in 1919. The notes were secured by a vendor's lien. Sallie Radford died in-testate in August, 1921. Four children born to Hardy and Sallie survived her as her sole heirs. Three of these children and the only heirs of the fourth are our plaintiffs. Hardy married Rosa in July, 1924. Six children were born of this union. These children and Rosa are our defendants.

On November 8, 1924, Hardy petitioned the Falls County Court for appointment as administrator of his and Sallie's community estate. At that time, the ages of Sallie's four surviving children were 13, 9, 5 and 3 years. On November 15, 1924, Hardy filed under oath what he denominated a "full, fair and complete" inventory and appraisement of the community estate, listing the 80-acres in question at a value of $44.00 per acre, plus live stock and implements of the value of $492.00, as assets; and reciting a lien indebtedness against the real estate of $1,000 secured by "vendor lien notes owing to T. B. McQueen at time of wife's death" as the only indebtedness of the estate. In truth, the only indebtedness of the estate at this time was $200 owing to McQueen on the original purchase money mortgage. On November 17, 1924, the County Court approved the inventory and appraisement; and, on that day, Hardy qualified as community administrator. Hardy's attorney in the administration proceedings was Robt. F. Higgins. No other material activity was had on the administration, and it has never been closed. On November 18, 1924, Hardy, individually and as administrator of the community estate, and his wife, Rosa, entered into a written contract with B. Dove for the destruction of the old dwelling house on the property in question and the construction of a new five-room frame dwelling thereon at a total cost of $1,439.60, payable by promissory notes in the amounts of $639.60 and $800.00, and granted B. Dove a mechanic's and materialman's lien on the whole 80 acres to secure the cost. On January 12, 1925, Hardy, individually and as community administrator, and Rosa, executed a deed of trust covering the 80

acres in favor of T. B. McQueen. The trustee therein was Robt. F. Higgins, Hardy's attorney in the estate administration proceeding. The deed of trust recites that it secures a promissory note "of even date" payable to McQueen in the principal amount of $1,000, that is made up of (1) the last of the $200 purchase money notes executed by Hardy and Sallie to their original grantor, which it states was assigned to T. B. McQueen on November 18, 1924, and (2) the $800 note described in the mechanic's lien contract executed by Hardy and Rosa to B. Dove on November 18, 1924, which it states was assigned to T. B. McQueen. Joined by Rosa, Hardy renewed and extended the $1,000 McQueen note by instruments dated December 1, 1928, and October 20, 1932. In each instance Hardy signed the renewals "for myself and as community administrator of the estate of myself and deceased wife Sallie Radford."

On March 19, 1936, in a suit by T. B. McQueen against Hardy and Rosa and Sallie's children, judgment was rendered in the District Court of Falls County foreclosing McQueen's liens upon the 80 acres and awarding him recovery on his note, with interest and attorney's fees, in the total amount of $1,321.40. Upon the basis of this judgment, the 80 acres was sold by sheriff's deed to Joe Gallaher for $350 on May 4, 1939. Gallaher was a banker in Falls County, and he and McQueen were close friends. By deed dated December 6, 1939, Joe Gallaher conveyed the 80 acres to Hardy for the consideration of $300 cash and Hardy's note for $1,000 payable in ten annual $100 installments. On the same day, Hardy and Rosa executed a deed of trust in favor of Gallaher securing the note. Hardy died intestate in 1972.

Plaintiffs pleaded and prosecuted this case upon the theory that the effect of Hardy's purchase of the property from Gallaher following the sheriff's sale was a redemption of one-half of it for their benefit because they were his cotenants, and because of his position as community administrator. Plaintiffs tendered defendants one-half of the amount paid for the reconveyance by Hardy, and interest on that amount from the date of the deed. There is undisputed testimony that none of the plaintiffs knew of Hardy's and Rosa's claim of ownership of all of the property until a few months before this suit was filed.

Upon the trial, four special issues were submitted to the jury. In answer thereto, the jury found that (1), (2) the land in question had a value of $3,200 at the time of the sheriff's deed to Gallaher and at the time of Gallaher's deed to Hardy, in 1939; that Gallaher (3) bought the 80 acres for Hardy's use and benefit; and, (4) Gallaher was acting as Hardy's agent when he purchased the property at the sheriff's sale for $350.00. The jury was instructed that the term "agent" meant "any person transacting a lawful business or act for another."

The judgment recited the acceptance of the verdict, and recited other findings made by the court upon undisputed proof, including a finding of cotenancy between Hardy and Sallie's children at the time of the sheriff's deed. The court concluded, among other things, that upon the conveyance of the acreage in question to Hardy from Gallaher, Hardy "received and held an undivided one-half of said property as a constructive Trustee of his said cotenants and heirs of the Estate of Sallie Radford, deceased," and that the other undivided one-half was received by Hardy as his and Rosa's community property. Judgment was rendered, accordingly.

Defendants assert (1) the evidence is legally and factually insufficient to support the jury's finding that Gallaher acted as Hardy's agent at the sheriff's sale, in response to issue no. 4; (2) there is no evidence to support the findings upon which the court based its conclusion that Hardy was a constructive trustee for Sallie's children as to one-half of the property conveyed to him; and (3) the court erred in overruling defendants' motion for judgment non obstante veredicto because there

is no evidence of a wrong committed by the defendants upon plaintiffs, no evidence that defendants have been unjustly enriched, and no evidence that the defendants breached any confidential or fiduciary relationship that would impose a constructive trust upon them, and because this lawsuit is an attempted collateral attack upon a judgment which divested plaintiffs of their interest in the land.

■ Hardy owed McQueen $1,000, secured by liens on the property. Hardy became delinquent. We judicially know that during much of the time of their dealings the economy was severely depressed, and that "owning real estate was more of a liability than an asset." Smith v. Wayman, 148 Tex. 318, 224 S.W.2d 211, 219 (1949). McQueen's understanding and forebearance manifested a preference for payment over the property. Finally, McQueen foreclosed, securing a judgment for $1,321.40. He delayed execution on the judgment for three years. On the resulting sheriff's sale, McQueen could have purchased the property, which at that time had a value of $3,200, at little cost to him. All he might have bid on it above court costs and less than the principal amount of the judgment would have been returned to him. Instead, he permitted Gallaher, his close friend, to buy the property at the sheriff's sale for $350. A few months later, Gallaher sold the property to Hardy for $1,300, virtually the same amount owed by Hardy to McQueen at the time of the foreclosure which divested Sallie's children of their interest in the property. This proof, although circumstantial of the fact proved, is legally sufficient to support the finding that Gallaher was acting as Hardy's agent at the sheriff's sale. See Miller v. Fleming, 149 Tex. 368, 233 S.W.2d 571, 575 (1950); Birmingham v. Gulf Oil Corporation, (Tex.Sup., 1974) 516 S.W.2d 914, 917. Moreover, a review of the entire record convinces us that this finding is not against the great weight and preponderance of the evidence.

■ Absent the consent of the others, a cotenant who buys an outstanding adversary claim to the common estate at a foreclosure sale or trustee's sale under a deed of trust does not acquire title to the interest of his cotenants by the purchase; "rather, it inures to the benefit of all cotenants." Cecil v. Dollar, 147 Tex. 541, 218 S.W.2d 448, 450–51 (1949). Accordingly, when Hardy purchased the acreage in question through his agent, Gallaher, he purchased an undivided one-half thereof for plaintiffs' benefit. For this reason, if none other, the judgment is correct. But, there are other reasons.

When Hardy made application to be appointed community administrator on November 8, 1924, the 80-acre tract had a value of $3,520, according to Hardy, and only $200 was owing on it. The personal property of the community estate was sufficient to pay this debt. Yet, Hardy falsely swore in the inventory and appraisement that the indebtedness was $1,000. He did this in anticipation of the $800 mechanic's and materialmen's lien he and Rosa would give on the 80 acres, on the day after the probate court approved the inventory and appraisement, to secure the cost of the construction of a new house. The probate court was thus denied the opportunity of passing upon the propriety of this encumbrance insofar as it affected plaintiffs' interest in the property. It was this lien which finally led to the judgment which divested plaintiffs of legal title to the land and to the sheriff's sale through which Hardy received the title.

■ Representatives of estates are bound to exercise a high degree of good faith and fair dealing, and preserve to the beneficiaries of the estate, so far as this can be done without injury to creditors, that part of the estate most beneficial to them. Fortune v. Killebrew, 70 Tex. 437, 7 S.W. 759, 761 (1888). Hardy assumed these responsibilities as community administrator and the father and natural guardian of his children. Our record supports determinations, implied in the judgment, that he failed in both capacities, and that the sole purpose in taking out the administration was to aid Hardy and Rosa in se-

curing the construction of a new house, and was not to protect the childrens' estate. To permit him, or any claiming under him other than a bona fide purchaser for value, to profit from that default at the expense of the beneficiaries under the record is unconscionable. Martin v. Robinson, 67 Tex. 368, 3 S.W. 550, 557 (1887); Baird v. Mills, (Tex.Civ.App.—Austin, 1938, writ ref.) 119 S.W.2d 889, 892.

Defendants are mistaken in their belief that this suit is a collateral attack upon the judgment of foreclosure. Plaintiffs in fact rely upon the judgment. What plaintiffs have properly and successfully done under our record is to call upon a court of equity to charge an undivided one-half of the property which flowed through the judgment to Hardy with a trust, and constitute those now claiming under him trustees for plaintiffs. This is not a collateral attack upon the judgment. Dilbeck v. Blackwell, (Tex.Civ.App.—Texarkana, 1939, writ ref.) 126 S.W.2d 760, 764.

Defendants' points and contentions are overruled. The judgment is affirmed.