**Allen E. ERTEL, Appellant,**

v.

**Lucy O'BRIEN, Individually and as Executrix of the Estate of Tillman O'Brien, et al., Appellees.**

**No. 10–92–172–CV.**

Court of Appeals of Texas, Waco.

March 24, 1993.

Rehearing Denied April 21, 1993.

Richard L. Merrill, Fabio & Merrill, Houston, for appellant.

L.G. Clinton III, Ben H. Schleider Jr., and David A. McDougald, Schleider & Associates, Houston, for appellees.

Before McDONALD, C.J. (Retired), and CUMMINGS and VANCE, JJ.

## OPINION

McDONALD, Chief Justice (Retired).

This is an appeal by plaintiff Ertel from that portion of a judgment that he take nothing against Citizens Bank and Brienwolf Corporation.

Plaintiff Ertel leased an airplane to Tillman and Lucy O'Brien for $2,333 per month. As a part of the agreement, the O'Briens were obligated to purchase the airplane for $185,000, less security deposits

and $1,250 for each year the aircraft was leased.

In 1984 Tillman O'Brien telephoned Ertel that he was going to transfer the airplane to Brienwolf Corporation, in which O'Brien had been a part owner, and which managed shopping centers in which O'Brien had an interest.

From September 1984 through December 1985 Brienwolf sent plaintiff sixteen monthly rental checks due on the airplane lease. Such checks were drawn on the "W O Partnership" (an entity in which O'Brien had an interest) and were drawn at the request of Tillman O'Brien and in lieu of partnership profits due to O'Brien. Brienwolf never made any agreement in writing to take over the lease payments to Ertel.

Tillman O'Brien died April 8, 1985, and Lucy O'Brien (Tillman's wife) and Citizens Bank were appointed Co–Independent Executors of the Estate, although the bank kept all the records and actually functioned as the executor.

Between the time of O'Brien's death on April 8, and July 30, plaintiff Ertel called the bank and spoke with a trust officer familiar with the O'Brien Estate. Ertel was assured there was adequate money to pay for the airplane, and further assured that the estate wanted to continue use of the airplane for awhile to transport Lucy's child to and from college.

On July 30, 1985, plaintiff Ertel wrote Citizens and Lucy O'Brien making demand for payment of $140,000 for the airplane and, in lieu of payment, execution of an agreement by the estate for the lease-purchase of the airplane. The bank received its demand letter and Lucy received her letter which she delivered to the bank.

Subsequent to plaintiff's claim being made, the bank paid unsecured claims to itself, in excess of $126,000, that it held against the O'Brien Estate, and paid other unsecured claims in excess of $50,000. Plaintiff Ertel's claim was never paid by the estate, Lucy O'Brien, Brienwolf, or the bank. Citizens resigned as Co–Independent Executor of the estate on August 15, 1986. Plaintiff Ertel sued Lucy O'Brien and Citizens Bank, each individually and as Co–Executor of the O'Brien Estate, for breach of the airplane lease and for failure to pay plaintiff's claim based on the lease. Plaintiff also sued Brienwolf based on Brienwolf's assumption of the payment obligations of the airplane lease and subsequent breach of the lease.

Plaintiff asserted that Citizens Bank should be individually liable based on (1) Citizens Bank's negligence in handling his claim; (2) Citizens Bank's failure to pay plaintiff's claim or a proportionate part of the assets of the O'Brien Estate available for payment to creditors having claims of the same classification and priority as plaintiff; (3) Citizens Bank's breach of its duty to the estate and plaintiff by paying and preferring the claims of other creditors, including Citizens Bank, which were of equal or inferior classification and priority to plaintiff's claim.

Trial was to the court which, after a hearing, rendered judgment for Ertel against Lucy O'Brien for $120,000 and further rendered judgment that Ertel take nothing against Citizens Bank and Brienwolf. The court, in findings of fact and conclusions of law, held that the bank did not breach a fiduciary duty it may have owed Ertel; that the bank was negligent in not memorializing Brienwolf's assumption of the airplane lease; and in failing to set aside a reserve to pay Ertel's claim in case Brienwolf did not pay same, but that such negligence did not constitute a breach of fiduciary duty. In further findings and conclusions the court found that the main purpose in Brienwolf's assuming the aircraft lease was not to benefit Brienwolf, and also held that the Statute of Frauds applied which barred plaintiff Ertel's claims against Brienwolf.

Plaintiff Ertel appeals only from that portion of the trial court's judgment in which he take nothing as to Citizens Bank and Brienwolf Corporation.

■ Ertel's point one asserts that the trial court erred in finding that Citizens Bank did not breach the fiduciary and statutory duties which were imposed upon it as Co–Independent executor of the O'Brien

Estate and which were owed to Ertel as a creditor of the estate.

Ertel had a valid claim against the estate by virtue of the aircraft lease. His claim was timely filed on July 30, 1985. The trial court found that this was proper notice of the claim against the estate. Citizens Bank, in its capacity as Independent Executor of the Estate, did not respond to or pay Ertel's claim although Citizens Bank acknowledged that the aircraft lease was an obligation of the O'Brien Estate.

Despite the bank's failure to pay Ertel's claim, the bank paid itself unsecured claims it had against the O'Brien Estate of over $126,000, plus payment of above $50,000 in unsecured claims to others, plus payment of debts for Tillman O'Brien's son which were not debts or obligations of the estate, plus delivering over $20,000 to Lucy O'Brien which was jointly owned by her and the estate.

Citizens Bank and Lucy O'Brien as Co-Executors of the O'Brien Estate loaned $650,000 of the estate funds to Super Warehouse Foods, a corporation, so that it could pay some of its debts. At the time the loan was made, Super Warehouse Foods was insolvent. Citizens Bank obtained the funds it used to loan $650,000 to Super Warehouse Foods and to pay some of the unsecured debt of the O'Brien Estate, including $126,975 in unsecured debts owed to Citizens Bank, by borrowing $827,-500 from Grocers Supply Company. In exchange for the loan, Citizens Bank and Lucy O'Brien executed a note for $1,200,-000 which covered the $827,500 plus renewing a $300,000 prior debt. They secured the debt with properties of the estate having a value of $3,900,000. The bank's explanation for the foregoing was that Tillman O'Brien had an interest in these businesses and it wanted to keep these entities operating and salable.

In 1985, the O'Brien Estate apparently made a capital contribution of $415,709 to W O Partnership. Citizens Bank was unable to explain how the estate obtained the capital to make such a contribution.

On June 30, 1985, the bank was holding $140,678 belonging to the estate. By November 30, 1985, the account held only $49,525. The bank was unable to explain the difference even though the account was under its control and any withdrawal required its approval.

Citizens Bank failed to marshall various assets for the benefit of the estate's creditors, including the equity interest of approximately $20,000 in a boat and $52,000 in jewelry. Following the bank's resignation as Co-Independent Executor of the Estate, it turned over to Lucy O'Brien the $20,515 which she and the estate owned jointly.

When Citizens Bank resigned as Co-Executor of the Estate, it had paid itself all of the unsecured debt owed to it by the estate but it did not pay Ertel's claim.

The executor of an estate is held to the same high fiduciary duties and standards in the administration of a decedent's estate as are applicable to trustees. *Humane Society v. Austin National Bank* (Tex.1975), 531 S.W.2d 574, 577. Such case further holds:

> It is a well settled rule that a trustee can make no profit out of his trust. The rule in such cases springs from his duty to protect the interests of the estate, and not to permit his personal interest to in anywise conflict with his duty in that respect. The intention is to provide against any possible selfish interest exercising an influence which can interfere with the faithful discharge of the duty which is owning in a fiduciary capacity.

To the same effect are *Bethurum v. Browder* (Tex.Civ.App.—El Paso 1948, n.r.e.), 216 S.W.2d 992, 995; *Radford v. Coker* (Tex.Civ.App.—Waco 1975), 519 S.W.2d 934, 937; *Slay v. Burnett Trust Co.* (1945), 143 Tex. 621, 187 S.W.2d 377, 388.

Citizens Bank was a corporate and professional fiduciary and, as such, should be held to a higher standard of care and competence than that to which an individual executor and fiduciary would be held. 31 Am.Jur.2d § 530.

An independent executor is charged with the duty of paying the claims against

the estate subject to the order and classification set out in the Probate Code. If there were insufficient assets with which to pay all creditors of the same class, then section 321 of the Probate Code mandates the claims of creditors of such class be paid on a pro rata basis.

The failure to pay the claims on an estate, or to pay the claims of creditors on a pro rata basis, subjects the executor to individual liability for such failure. *Clifford v. Campbell* (1886), 65 Tex. 243; 34 C.J.S. § 472; Tex.Prob.Code § 328. Moreover, breach of duty and mismanagement of the estate by an independent executor renders the independent executor individually liable. *Drake v. Trinity Universal Ins. Co.* (Tex.1980), 600 S.W.2d 768, 772; *Rice v. Gregory* (Tex.App.—Texarkana 1989), 780 S.W.2d 384, 388; *Interfirst Bank–Houston v. Quintana Petroleum* (Tex.App.—Houston [1st Dist.] 1985), 699 S.W.2d 864, 874.

It is clear that Citizens Bank breached its statutory and fiduciary duties. The trial court's finding that it did not do so is in error. Point one is sustained.

Point two asserts that the trial court erred in finding Citizens Bank's negligence in the handling of Ertel's claim does not constitute a breach of fiduciary duty. As noted, the trial court found Citizens Bank negligent in not memorializing Brienwolf's assumption of the aircraft-lease obligations, or in failing to provide a reserve in case Brienwolf did not pay the entire lease. However, the court found that such negligence did not constitute a breach of fiduciary duty. A trustee commits breach of trust not only where he violates a duty in bad faith, or intentionally although in good faith, or negligently but also where he violates a duty because of a mistake. Restatement of Trusts 2d Ed. par. 201; Bogert, Trusts and Trustees, par. 522 p. 374; *Brault v. Bigham* (Tex.Civ.App.—Waco 1973, n.r.e.), 493 S.W.2d 576, 579; *Burnett v. First Nat'l Bank* (Tex.Civ.App.—Tyler 1978, n.r.e.), 567 S.W.2d 873, 876; *Jewett v. Capitol Nat'l Bank* (Tex.Civ.App.—Waco 1981, n.r.e.), 618 S.W.2d 109, 112. The trial court erred in finding Citizens Bank's negligence in the handling of Ertel's claim did

not constitute a breach of fiduciary duty. Point two is sustained.

Point three asserts the trial court erred in finding that the claim which Ertel presented to the O'Brien Estate was conditional and not entitled to the same classification as Citizens Bank's claims against the O'Brien Estate for unsecured debts. The claim submitted by Ertel reads in pertinent part: "On the other hand, if the estate would rather complete the transaction at this time rather than continue with the lease arrangement and purchase the aircraft next year, the purchase price would be $140,000. I therefore request the payment of either the $140,000 due or the execution of the agreement by the estate so that the estate becomes liable for the payment as well as the lease payments."

The claim was presented within six months of the date of the granting of letters testamentary. Ertel was entitled to have his claim paid either at the time the other unsecured claims were paid or upon expiration of the term of the aircraft lease, and if there were insufficient funds to pay all Class 5 claims, then Ertel should have received his pro rata portion of the funds available to pay this class of claims. Point three is sustained.

Point four asserts the trial court erred in finding that Citizens Bank exercised good faith in believing that Brienwolf would assume the aircraft lease and that the lease was no longer an obligation of the O'Brien Estate.

The trial court found that Citizens Bank believed, in good faith, that Brienwolf Corporation would assume the obligations of the lease, and further believed that Ertel's claim was no longer an obligation of the estate. The trial court further found that Citizens Bank was negligent in failing to memorialize the assignment of the aircraft lease to Brienwolf. This finding negates the finding the bank could have a good faith belief that the lease had been assigned and that Ertel's claim was no longer an obligation of the estate.

■ Even if the trial court's finding of "good faith" was not contradicted by the finding of negligence, the evidence of good faith is not a defense to breach of fiduciary duty. *Slay*, 187 S.W.2d at 377; *Brault*, 493 S.W.2d at 576. And even if good faith were available as a defense to Citizens Bank, Tex.R.Civ.P. 94 required that the bank specifically plead it, which they did not do. Point four is sustained.

■ Point six asserts the trial court erred in finding that Ertel was barred by the Statute of Frauds from enforcing Brienwolf's assumption of the aircraft lease, either in whole or in part; and point seven asserts that the trial court erred in failing to grant judgment to Ertel against Brienwolf based upon Brienwolf's assumption of the obligation of the aircraft lease.

Plaintiff Ertel testified that Tillman O'Brien telephoned him in 1984 that he was going to transfer the airplane lease to Brienwolf and that Brienwolf would assume responsibility for the lease. Ertel further testified that from September 1984 through December 1985 Brienwolf sent him sixteen monthly rental checks due under the airplane lease. The checks were drawn on W O Partnership—not Brienwolf. There was never a written agreement from Brienwolf to take over the lease payments. Frederick Wolfson, President of Brienwolf, testified that he did not agree to assume the lease on behalf of Brienwolf; that the payments were forwarded by Brienwolf to Ertel at the request of the W O Partnership in lieu of distribution of partnership profits due to Tillman O'Brien; that Brienwolf had no use for the aircraft; that Brienwolf received no tax benefits or deductions from use of the airplane. Sylvia Leyendecker, Vice President of Brienwolf, confirmed Wolfson's testimony; denied that she assumed the airplane lease on behalf of Brienwolf; and that Lucy O'Brien wanted to use the airplane.

The Statute of Frauds, Texas Business & Commercial Code section 26.01, provides in pertinent part that a promise or agreement to assume on the debt of another is not enforceable unless the promise or agreement, or a memorandum of it, is in writing and signed by the person to be charged with the promise or agreement, or someone lawfully authorized to sign for him.

The lease had more than one year to run; there was no writing or memorandum signed by anyone agreeing to assume obligations under the aircraft lease; and the evidence is overwhelming that the purpose of continuing the lease was for the use and benefit of Lucy O'Brien or her son. Points six and seven are overruled.

The sustaining of points one, two, three, and four requires a reversal of the take-nothing judgment granted in favor of Citizens Bank. Accordingly, plaintiff's case against the Citizens Bank is remanded to the trial court in its entirety. *See Morrow v. Shotwell* (Tex.1972), 477 S.W.2d 538; *Littlejohn v. Kariel* (Tex.Civ.App.—Waco 1978), 568 S.W.2d 452; *Kandy v. Presslor* (Tex.Civ.App.—Waco 1977), 556 S.W.2d 99.

The overruling of points six and seven requires an affirmance of the take-nothing judgment granted in favor of Brienwolf. Under our disposition, points five and eight pass out of the case. The judgment is reversed and remanded as to Citizen Bank and affirmed as to Brienwolf Corporation.

Reversed and remanded in part; affirmed in part.