FCLT LOANS, L.P., Successor in Interest to First City Bank—Inwood Forest, N.A., Appellant,

v.

The ESTATE OF Louise P. BRACHER; Antoinette Bracher Lawrence, Individually and as Co–Executrix of the Estate of Louise Bracher; Barbara K. Olson, Individually and as Co–Executrix of the Estate of Louise Bracher; James V. Bracher, Individually and as Co–Trustee of the David A. Bracher Family Trust; Victoria Bracher Noyes, Individually and as Co–Trustee of the David A. Bracher Family Trust; and David A. Bracher, Appellees.

No. 14–00–00577–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Oct. 17, 2002.

Mynde S. Eisen, Houston, for appellants.

Cathleen C. Herasimchuk, Marcus E. Faubion, Rusty Hardin, Houston, for appellees.

Rusty Hardin, for Barbara Olson.

* Senior Chief Justice Paul C. Murphy sitting by assignment.

Panel consists of Justices EDELMAN and FROST and Senior Chief Justice MURPHY.*

## OPINION ON MOTION FOR REHEARING

PAUL C. MURPHY, Senior Chief Justice (Assigned).

Appellant's motion for rehearing is overruled; the opinion issued in this case on February 28, 2002, is withdrawn, and the following opinion is issued in its place.

This appeal comes before us on competing motions for summary judgment in a suit brought by appellant, FCLT Loans, L.P., to recover a debt allegedly owed to FCLT by Louise Bracher's estate. The trial court granted appellees' motions, denied FCLT's motion, and entered judgment that FCLT take nothing. We reverse the judgment in part and affirm in part, and we remand for further proceedings consistent with this opinion.

### Factual Background

In 1980, Victor Bracher executed a note with First City Bank—Inwood Forest, N.A., secured by a Deed of Trust covering eight tracts of land in Harris County. Two years later, Victor and his wife, Louise, established three trusts, each named for one of the couple's three children: the Antoinette Bracher Lawrence Trust, the Barbara K. Bracher Trust, and the David A. Bracher Family Trust. These trusts were each initially funded with several properties, although none of the properties used to secure Victor's 1980 note were included. Each trust named Victor and Louise as both grantors and trustees, and each permitted them to direct the distribution of the income and principal of the trust. Each trust also contained a "spendthrift" clause, providing

that before actual receipt by a beneficiary of any income or property from the trust, the property could not be attached by any of the beneficiary's creditors.

Victor died in 1987, and Louise Bracher was appointed independent executor of his estate. In 1988, Louise signed a Modification, Renewal and Extension of Real Estate Note and Liens and Deed of Trust ("Renewal Note") with First City, in the amount of $388,822.37. Louise signed the note both individually and in her capacity as independent executor of Victor's estate. By its terms, the Renewal Note came due on February 18, 1991.

After a series of mergers and name changes, First City was placed into receivership. The Renewal Note was eventually assigned to FCLT in 1995. In 1997, FCLT sent Louise a notice of default and demand for payment on the Renewal Note.

Shortly after FCLT sent the default notice, however, Louise died. Louise's daughters, Antoinette Bracher Lawrence and Barbara Olson,[1] were appointed co-independent executors of her estate. By their terms, both the Antoinette Bracher Lawrence Trust and the Barbara K. Bracher Trust were distributed to Lawrence and Olson, respectively. The David A. Bracher Family Trust ("Family Trust"), however, remained intact, with two of Victor and Louise's grandchildren—James Bracher and Victoria Bracher–Noyes—later appointed co-trustees.

### PROCEDURAL BACKGROUND

In February 1998, unaware that Louise Bracher had died, FCLT filed the present lawsuit against her, seeking the amount due under the Renewal Note plus attorney's fees. A year later, FCLT amended its petition to name as defendants (1) the Estate of Louise Bracher; (2) Lawrence, both individually and as co-executor of Louise's estate; (3) Olson, both individually and as co-executor of Louise's estate; and (4) David Bracher. In addition to seeking payment under the Renewal Note, FCLT further alleged that the defendants "dissipated" the assets in Louise's estate and that Lawrence and Olson breached their fiduciary duties by allowing this dissipation of estate assets. In June 1999, FCLT again amended its petition, adding three new defendants: (1) the Family Trust; (2) Bracher–Noyes, both individually and as co-trustee of the Family Trust; and (3) James Bracher, both individually and as co-trustee of the Family Trust. FCLT's second amended petition also added a claim, under the heading "Fraud," alleging the defendants acted knowingly and intentionally.

David Bracher filed a motion for summary judgment in December 1999. In February 2000, three of the other defendants—Bracher-Noyes and James Bracher (both individually and as co-trustees) and Lawrence (in her individual capacity only)—filed a separate summary judgment motion (the "First Joint Motion").[2] FCLT responded by again amending its petition. Ultimately, FCLT's petition asserted the following five causes of action:

(1) A claim against Lawrence and Olson[3] for their refusal to pay the

---

**1.** Some time after the trusts were created, Barbara Bracher married and changed her name to Barbara Olson.

**2.** Olson had not yet appeared in the lawsuit at the time the First Joint Motion was filed.

**3.** On this and some other claims in FCLT's petition, FCLT does not specify the capacity in which the named defendants are being sued. For purposes of our review, we will treat these claims as having been raised against each such defendant in both the defendant's individual and representative capacity.

amount due under the Renewal Note.

(2) Claims against Lawrence and Olson, as co-executors of Louise Bracher's estate, and against Lawrence, Olson, James Bracher, and Bracher–Noyes for "dissipation of assets."

(3) Claims against Lawrence, Olson, James Bracher, and Bracher–Noyes for breach of fiduciary duty.

(4) Claims against Lawrence, Olson, James Bracher, and Bracher–Noyes, both as individuals and as executors or trustees, for conversion.

(5) A claim against Lawrence and Olson for engaging in fraudulent acts.

FCLT sought a judgment in the amount of the debt plus interest and attorney's fees, a turnover order for all assets currently in or received from Louise's estate or the trusts to pay FCLT's debt, an accounting from the co-executors of Louise's estate and the co-trustees of the Family Trust, and an injunction against further distributions from Louise's estate or the Family Trust.

After FCLT amended its petition, David Bracher filed an amended motion for summary judgment, while the remaining defendants filed a new motion for summary judgment (the "Second Joint Motion").[4] FCLT also filed its own motion for summary judgment.

The trial court granted all defendants' motions and ordered that FCLT take nothing. In twelve points of error, FCLT complains the trial court erred by (1) granting summary judgment based on limitations; (2) granting summary judgment based on the statute of frauds; (3) granting defendants' summary judgment

motions based on "no evidence"; and (4) denying FCLT's motion for summary judgment (a) against Louise's estate on the debt; (b) against Lawrence and Olson individually for breach of fiduciary duty and for holding and dissipating assets subject to FCLT's debt claim; (c) against James Bracher and Bracher–Noyes, as co-trustees, for holding assets in the Family Trust subject to FCLT's debt claim; (d) against James Bracher and Bracher–Noyes individually for breach of fiduciary duties and for receiving and dissipating assets subject to FCLT's debt claim; (e) against David Bracher for receiving assets subject to FCLT's debt claim; (f) for an accounting; (g) for foreclosure and/or garnishment of assets subject to FCLT's debt claim and for an injunction against further dissipation of such assets; and (h) for FCLT's attorney's fees.

## STANDARD OF REVIEW

The following standard for reviewing a traditional motion for summary judgment is well-established: (1) the movant must show that no genuine issue of material fact exists and that it is entitled to summary judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, proof favorable to the nonmovant will be taken as true; and (3) every reasonable inference must be resolved in the nonmovant's favor. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). On a "no evidence" summary judgment, we review the proof in the light most favorable to the nonmovant and disregard all proof and inferences to the contrary. *Lampasas v. Spring Ctr., Inc.*, 988

---

4. The Second Joint Motion was filed on behalf of Lawrence and Olson, both individually and as co-executors of Louise's estate, and James Bracher and Bracher–Noyes, both individually and as co-trustees of the Family Trust. In contrast to David Bracher's motion, the Second Joint Motion was not captioned as an amended motion. Thus, the First Joint Motion remained pending.

S.W.2d 428, 432 (Tex.App.-Houston [14th Dist.] 1999, no pet.). A no-evidence summary judgment is improperly granted if the nonmovant counters with more than a scintilla of probative proof to raise a genuine issue of material fact. *Id.* More than a scintilla of proof exists when the proof "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *See Merrell Dow Pharms., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997) (quoting *Transportation Ins. Co. v. Moriel,* 879 S.W.2d 10, 25 (Tex. 1994)).

Where, as here, both sides move for summary judgment, and one motion is granted while the other is denied, we must review the summary judgment proof and determine all questions presented, rendering such judgment as the trial court should have rendered. *Commissioners Court v. Agan,* 940 S.W.2d 77, 81 (Tex.1997). Because the trial court's order does not specify the grounds upon which summary judgment was granted, we may affirm the judgment on any theory advanced in the motions that is meritorious. *Carr v. Brasher,* 776 S.W.2d 567, 569 (Tex.1989).

### APPELLEES' MOTIONS FOR SUMMARY JUDGMENT

In its first three points of error, FCLT contends the trial court erred by granting appellees' motions for summary judgment based on (1) limitations, (2) the statute of frauds, and (3) "no evidence" of one or more essential elements of FCLT's claims. Because we may affirm the court's judgment on any meritorious ground asserted, we will review each cause of action alleged by FCLT and determine whether appellees have established their entitlement to summary judgment on any ground.

### Debt

FCLT first alleges "Defendants Lawrence and Olson have refused and continue to refuse to pay the legitimate debt of the estate." FCLT's debt claim is based on Louise Bracher's failure (and the subsequent failure of her estate) to pay money allegedly due under the Renewal Note. FCLT does not assert that Bracher–Noyes, James Bracher, or David Bracher are personally liable on the Renewal Note. Thus, we need not address any grounds for summary judgment asserted by these three appellees on FCLT's debt claim.

In the First Joint Motion, Lawrence (in her individual capacity) asserted she is entitled to summary judgment because there is no proof that she signed the Renewal Note, as required under section 3.401 of the Uniform Commercial Code.[5] In the Second Joint Motion, Lawrence and Olson argue FCLT's claim is barred by the "statute of frauds" set forth in section 3.401, as well as section 26.01 of the Business and Commerce Code.[6] FCLT does not contend that Lawrence or Olson signed the

---

5. Section 3.401 provides, "A person is not liable on an instrument unless the person . . . signed the instrument. . . ." TEX. BUS. & COM. CODE ANN. § 3.401(a) (Vernon 2002).

6. The relevant portion of section 26.01 states:
 (a) A promise or agreement described in Subsection (b) of this section is not enforceable unless the promise or agreement, or a memorandum of it, is
 (1) in writing; and
 (2) signed by the person to be charged with the promise or agreement or by

someone lawfully authorized to sign for him.
 (b) Subsection (a) of this section applies to:
 (1) a promise by an executor or administrator to answer out of his own estate for any debt or damage due from his testator or intestate; [and]
 (2) a promise by one person to answer for the debt, default, or miscarriage of another person. . . .
TEX. BUS. & COM.CODE ANN. § 26.01 (Vernon 2002).

Renewal Note, nor does it allege they made any promise or agreement in writing to answer for Louise's alleged debt to FCLT. Accordingly, as to both Lawrence and Olson in their individual capacities, we conclude summary judgment was appropriate.

█ In their capacities as co-executors, however, Lawrence and Olson have not demonstrated their entitlement to summary judgment. Under the Probate Code, a person having a debt against an estate "may enforce the payment of the same by suit against the independent executor." TEX. PROB.CODE ANN. § 147 (Vernon 1980). There is no dispute Louise Bracher signed the Renewal Note. Lawrence and Olson asserted no summary judgment ground on FCLT's debt claim other than the statute of frauds. Accordingly, we find the trial court erred in granting summary judgment on this claim in favor of Lawrence and Olson, in their capacities as co-executors of Louise's estate.

### "Dissipation of Assets"

Under the heading "Dissipation of Assets," FCLT's petition raises four separate claims. First, FCLT alleges Lawrence and Olson, in their capacities as co-executors of Louise's estate, fraudulently transferred assets from the estate to themselves and the Family Trust. Second, FCLT claims Louise Bracher fraudulently transferred assets into the three trusts.[7] In the Second Joint Motion, Lawrence and Olson, in their capacities as co-executors of the estate, assert that FCLT's fraudulent transfer claims are barred by limitations. Under the Uniform Fraudulent Transfer Act ("UFTA"), a cause of action for fraudulent transfer must be brought either (1) in most cases, "within four years after the

transfer was made"; (2) in cases where the alleged transfer was made to an insider for an antecedent debt, "within one year after the transfer was made"; or (3) in cases where the plaintiff alleges actual intent to defraud, "within one year after the transfer or obligation was or could reasonably have been discovered by the claimant." TEX. BUS. & COM.CODE ANN. § 24.010 (Vernon 2002).

█ With respect to any transfers allegedly made by Lawrence and Olson from Louise Bracher's estate, no such transfers could have been made until after Lawrence and Olson were appointed co-executors. This appointment did not occur until after Louise's death in 1997. FCLT's lawsuit was filed well within the limitations period. Accordingly, summary judgment on this particular claim was inappropriate.

█ Regarding FCLT's claim that Louise Bracher fraudulently transferred assets into the trusts, Lawrence and Olson argue the allegedly fraudulent transfers occurred, if at all, when the three trusts were funded. Because Louise Bracher's last affirmative act placing assets into the trusts occurred in 1988, Lawrence and Olson assert FCLT's cause of action accrued no later than 1988, and thus is barred by the UFTA's four-year statute of limitations. We disagree.

Under the UFTA, a "transfer" of real property is made

> when the transfer is so far perfected that a good faith purchaser of the asset from the debtor against whom applicable law permits the transfer to be perfected cannot acquire an interest in the asset that is superior to the interest of the transferee.

---

7. This claim is properly brought against Lawrence and Olson in their capacities as co-executors. *See* TEX. PROB.CODE ANN. § 147.

*Id.* § 24.007(1)(A) (Vernon 2002). By the express terms of the trusts, Louise Bracher retained full control over the right to sell or otherwise dispose of the property in those trusts during her lifetime. Therefore, none of the property held in the trusts could have been transferred, for UFTA purposes, until Louise's death in 1997. Only then was the transfer of property "so far perfected" that a potential purchaser could no longer acquire a superior interest in the property from Louise Bracher. Accordingly, we conclude FCLT's cause of action based on alleged fraudulent transfers from Louise Bracher to the trusts was brought within four years after the alleged transfers were made.

Because limitations was the only summary judgment ground asserted by Lawrence and Olson, in their capacities as co-executors of Louise's estate, the trial court erred in granting summary judgment in their favor on FCLT's claim for "dissipation of assets."

FCLT's third and fourth claims under the "dissipation" heading are that the refusal of Lawrence, Olson, James Bracher, and Bracher–Noyes to pay FCLT's debt claim from trust assets is a fraudulent transfer,[8] and that any transfer of assets from the three trusts to the individual defendants[9] constitutes a fraudulent transfer. Essentially, FCLT alleges that in addition to the transfers from Louise into the trusts, any subsequent transfers from the trusts, as well as the refusal to pay FCLT's debt claim from the trust assets, are themselves fraudulent transfers under the UFTA. In the First Joint Motion, Lawrence, Bracher–Noyes, and James Bracher argued (1) FCLT's claim is excluded as a "debt" under the UFTA, and (2) there is no evidence to support several essential elements of FCLT's claim.

Lawrence, Bracher–Noyes, and James Bracher first argue any property that was subject to FCLT's Deed of Trust lien could not have been fraudulently transferred because such property was not an "asset" under the UFTA. *See* Tex. Bus. & Com.Code Ann. § 24.002(2)(A) (Vernon 2002) (defining "asset" to exclude "property to the extent it is encumbered by a valid lien"); *see also id.* § 24.002(12) (defining "transfer" as any mode of disposing of or parting with "an asset or an interest in an asset"). It appears from the record, however, that FCLT's fraudulent transfer claim does not include the specific properties named in the Deed of Trust accompanying Victor Bracher's 1980 note. Accordingly, this portion of the First Joint Motion does not apply to FCLT's fraudulent transfer claim.

█ In the "no evidence" portion of their argument, Lawrence, Bracher–Noyes, and James Bracher asserted there was no evidence that any alleged transfer of assets met any of the tests for a fraudulent transfer set forth in the UFTA.[10] With

---

8. FCLT does not specify in which capacity it alleges the defendants acted. Because this claim focuses on the use of *trust* assets, however, we will presume the claim is directed to Olson and Lawrence as individuals and James Bracher and Bracher–Noyes in their capacities as co-trustees of the Family Trust.

9. At Louise's death, Lawrence and Olson each received the assets in their respective trusts outright, while the Family Trust remained intact, with Bracher–Noyes and James Bracher eventually named as co-trustees. FCLT claims that Bracher–Noyes, James Bracher, and David Bracher have each received disbursements from the Family Trust.

10. The UFTA provides at least four different grounds for finding a transfer to be fraudulent. *See* Tex. Bus. & Com.Code Ann. §§ 24.005(a)(1), 24.005(a)(2), 24.006(a), & 24.006(b) (Vernon 2002). Although FCLT refers to both sections 24.005 and 24.006 in its petition, it cites only section 24.006 in response to the various summary judgment motions. Furthermore, FCLT conceded during

respect to alleged transfers of trust assets, we agree FCLT presented no summary judgment proof that such transfers met any of the grounds for fraudulent transfers under the UFTA. At most, FCLT presented proof that assets were transferred from the trusts, but FCLT failed to point to any summary judgment proof that these transfers met the requirements set forth in section 24.006. For example, FCLT failed to provide any proof that the trusts were insolvent at the time of an alleged transfer, or that they became insolvent as a result of a transfer. We conclude that, to the extent FCLT alleges that Lawrence, Bracher–Noyes, or James Bracher transferred assets from the three trusts to themselves or others, FCLT failed to present summary judgment proof that those transfers were fraudulent, and therefore summary judgment was appropriate on that portion of FCLT's claim.

■ Because Olson was not a party to the First Joint Motion, her only asserted ground for summary judgment on FCLT's fraudulent transfer claims against her individually is limitations. As noted above, the UFTA has a four-year statute of limitations on most claims. TEX. BUS. & COM. CODE ANN. § 24.010. Any claim against Olson for fraudulent transfer of trust assets could not have accrued until after she took possession of the trust assets on Louise's death in 1997. Accordingly, the trial court

erred in granting summary judgment on this claim to Olson individually.

FCLT also alleges appellees *received* assets from Louise Bracher or her estate that were fraudulently transferred. Under the UFTA, a creditor may, under certain circumstances, recover judgment from the transferee for the value of a fraudulently transferred asset, attach the transferred asset or other property of the transferee, or obtain an injunction against the transferee preventing further disposition of the asset or other property. *See* TEX. BUS. & COM.CODE ANN. §§ 24.008, 24.009 (Vernon 2002). Because we conclude the trial court erred in granting summary judgment on some of FCLT's fraudulent transfer claims, those appellees receiving assets alleged to have been fraudulently transferred may be subject to the remedies set forth in the UFTA, and thus they remain proper parties to FCLT's fraudulent transfer claims. *See id.*

Finally, David Bracher asserts he was entitled to summary judgment because FCLT failed to produce any proof of the amount or value of assets allegedly transferred or received by him. In response, FCLT refers to James Bracher's deposition, during which he identified at least two checks, totaling over $20,000, that were made out to David Bracher from the Family Trust. FCLT alleges this trust is comprised of funds that were fraudulently transferred from Louise's estate. We can-

---

oral argument that it was not asserting an actual intent to defraud, a required element for a claim arising under section 24.005(a)(1). We therefore presume that FCLT's fraudulent transfer claim is limited to the grounds set forth in section 24.006.

Section 24.006 provides:
(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably

equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.
(b) A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.
*Id.* § 24.006.

not say that FCLT has presented no proof of the value of assets transferred to David Bracher.

Therefore, with respect to FCLT's claim for dissipation of assets, we conclude: (1) the trial court erred in granting summary judgment in favor of Lawrence and Olson, as co-executors of Louise's estate; (2) the trial court erred in granting summary judgment in favor of Olson, individually, based on any alleged transfer she made; and (3) the trial court did not err in granting summary judgment in favor of Lawrence, individually, and Bracher–Noyes and James Bracher, individually and as co-trustees of the Family Trust, based on any alleged transfers they made.[11] To the extent that the individual appellees each received assets that were alleged to have been fraudulently transferred by Louise or the executors of her estate, however, they should not be dismissed from the lawsuit as defendants with respect to FCLT's fraudulent transfer claims.

## Breach of Fiduciary Duty

Next, FCLT alleges Lawrence and Olson breached alleged fiduciary duties by allowing the assets in Louise's estate to be dissipated before paying FCLT's alleged debt. FCLT also claims Bracher–Noyes and James Bracher breached fiduciary duties by allowing the Family Trust's assets to be dissipated as well.

■ In the First Joint Motion, Lawrence, Bracher–Noyes, and James Bracher moved for summary judgment on the ground that there is no evidence by which FCLT established the existence of a fiduciary duty. Fiduciary duties arise either from certain formal relationships that are recognized as fiduciary as a matter of

law, or from the existence of an informal, "confidential" relationship between the parties. *Insurance Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex.1998). The existence of a confidential or fiduciary relationship is ordinarily a question of fact, and the issue only becomes a question of law when it is one of no evidence. *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 594 (Tex. 1992). A party asserting breach of a fiduciary duty must establish the existence of a confidential or similar relationship giving rise to a fiduciary duty. *See Bado Equip. Co. v. Bethlehem Steel Corp.*, 814 S.W.2d 464, 475 (Tex.App.-Houston [14th Dist.] 1991, no writ). FCLT has provided no proof of any relationship between FCLT and Bracher–Noyes or James Bracher that may give rise to a fiduciary duty. Accordingly, Bracher–Noyes and James Bracher are entitled to summary judgment on FCLT's breach of fiduciary duty claim.

■ With respect to Lawrence, however, FCLT asserts a fiduciary duty arose by virtue of Lawrence's duties as an independent executor. The relationship between an executor and the estate's beneficiaries is one that gives rise to a fiduciary duty as a matter of law. *Huie v. DeShazo*, 922 S.W.2d 920, 923 (Tex.1996). However, no such formal recognition exists for the relationship between an independent executor and the estate's *creditors*. An executor's fiduciary duty to the estate's beneficiaries arises from the executor's status as trustee of the property of the estate. *Humane Soc'y v. Austin Nat'l Bank*, 531 S.W.2d 574, 577 (Tex.1975). Under the Probate Code, a decedent's estate immediately vests in the devisees, legatees, and heirs at law of the estate, subject to payment of the decedent's debts. TEX. PROB.

---

**11.** This includes any alleged "transfer" consisting of the refusal to pay FCLT's debt

claim.

CODE ANN. § 37 (Vernon Supp.2002). The executor thus holds the estate in trust for the benefit of those who have acquired a vested right to the decedent's property under the will. *See id.* FCLT points to no provision in the Probate Code or elsewhere that an independent executor also holds the estate property in trust for those with claims against the estate. FCLT cites only section 146 of the Probate Code, which imposes certain duties on an independent executor, including a duty to approve and pay proper claims against the estate. TEX. PROB.CODE ANN. § 146(a) (Vernon Supp.2002). This statutory duty does not support a claim that an independent executor holds estate assets in trust for the benefit of creditors, nor does it otherwise give rise to a fiduciary duty.

Our research has revealed two cases in which Texas courts, with minimal analysis, have described the relationship between an independent executor and a creditor of the estate as "fiduciary." In *Ertel v. O'Brien*, 852 S.W.2d 17 (Tex.App.-Waco 1993, writ denied), the appellate court held a bank acting as independent executor of an estate "breached its statutory and fiduciary duties" and was individually liable to a creditor for the bank's failure to pay a valid claim against the estate. *Id.* at 21. The authorities cited in *Ertel*, however, provide support for two distinct propositions: (1) by statute, an executor is subject to individual liability for failing to pay a proper claim against the estate; and (2) the executor of an estate is held to the same fiduciary standards as a trustee. *See id.* at 20–21. The court provides no analysis or explanation why an independent executor's fiduciary duty to the estate should be expanded to include a duty to the estate's creditors.

In *Ex parte Buller*, 834 S.W.2d 622 (Tex. App.-Beaumont 1992, orig. proceeding), a habeas corpus proceeding, the court notes an independent executor "stands in a fiduciary relationship" with the estate's creditors. *Id.* at 626. In support of this proposition, the court cites two Texas Supreme Court cases: *Pearce v. Stokes*, 155 Tex. 564, 291 S.W.2d 309 (1956), and *Cochran's Adm'rs v. Thompson*, 18 Tex. 652 (1857). Both cases are distinguishable because each deals with court-appointed (as opposed to independent) administrations. In *Pearce*, the issue was whether an estate administrator could set aside the forced sale of the decedent's property by one holding a mortgage on that property, where the sale occurred after the decedent's death, but before administration of the estate began. The court held the administrator could set aside the sale, stating the administration of an estate "is for the benefit of all creditors, not just those who have secured claims or other claims of high priority." 291 S.W.2d at 312. Thus, the court in *Pearce* was concerned not with the relationship between the executor and the estate's creditors, but rather the relationship among the various creditors. We do not read *Pearce* to say the executor in that case owed a fiduciary duty to the estate's creditors. In *Thompson*, the court notes the appointment of an administrator in that case was "merely a trust to pay the claims of creditors, and then to restore the remainder of the assets to the heirs." 18 Tex. at 656. The appointment of an executor or administrator may, depending on the language in the court's order, create a trust on behalf of the estate's creditors and, therefore, a fiduciary duty to the creditors. Under the present statutory scheme, however, we cannot say an independent executor automatically holds the estate assets in trust for the benefit of estate creditors.

We conclude that the relationship between FCLT and Lawrence, as independent executor of Louise Bracher's estate, does not give rise to a fiduciary duty as a

matter of law. Furthermore, FCLT failed to provide any proof supporting the existence of a confidential or similar relationship between Lawrence and FCLT. Accordingly, summary judgment was properly granted in favor of Lawrence.

■ In the Second Joint Motion, Olson asserted she was entitled to summary judgment based on the statute of limitations. Breach of fiduciary duty claims are governed by the four-year statute. TEX. CIV. PRAC. & REM.CODE ANN. § 16.004(a)(5) (Vernon Supp.2002). Any fiduciary duties that Olson allegedly owed to FCLT would not have come into existence until after Louise Bracher's death in 1997, when she became co-executor of Louise's estate. Because her alleged duty could not have arisen before 1997, any claim against Olson for breach of this purported duty likewise could not have accrued before that time. Therefore, Olson is not entitled to summary judgment on limitations.

Accordingly, on FCLT's breach of fiduciary duty claim, we conclude the trial court erred in granting summary judgment in favor of Olson, but the court did not err in granting summary judgment in favor of Lawrence, Bracher–Noyes, and James Bracher.

### Conversion

■ FCLT next alleges that by refusing to use assets in their possession to pay FCLT's debt claim, Lawrence, Olson, Bracher–Noyes, and James Bracher have converted those assets to the detriment of FCLT. In their Second Joint Motion, appellees asserted this claim fails because FCLT never had title to or the right to possess the assets that were allegedly converted. We agree. To bring a conversion claim, the aggrieved party must have either ownership, possession, or the right to immediate possession of the property. *Crutcher v. Continental Nat'l Bank,* 884

S.W.2d 884, 888 (Tex.App.-El Paso 1994, writ denied). A lien on property does not provide title to that property, but rather the right to have satisfaction out of the property to secure the payment of a debt. *Id.* Because the plaintiffs in *Crutcher* had only a right to obtain satisfaction of a debt (*i.e.,* a lien), the court held they had no cause of action for conversion. *Id.* at 889. Similarly, FCLT does not claim title to, possession of, or a right to immediate possession of the property in question. FCLT claims only a lien on certain property for payment of its alleged debt. We conclude that summary judgment was properly granted against FCLT on its conversion claim.

### Fraud

■ Finally, FCLT alleges Lawrence and Olson engaged in fraudulent behavior by knowingly and intentionally engaging in the acts complained of elsewhere in the petition. Lawrence and Olson contend they are entitled to summary judgment on FCLT's fraud claim because FCLT has presented no evidence to support the essential elements of common-law fraud. Specifically, FCLT failed to provide summary judgment proof showing the existence of (1) a false, material misrepresentation (2) that was knowingly or recklessly made (3) with the intent that the statement be relied upon by FCLT. *See Sears, Roebuck & Co. v. Meadows,* 877 S.W.2d 281, 282 (Tex.1994) (per curiam). To the extent FCLT's petition may be read as raising an independent cause of action for common-law fraud, summary judgment for Lawrence and Olson is proper.

### FCLT's MOTION FOR SUMMARY JUDGMENT

■ FCLT's nine remaining points of error are all directed at the trial court's denial of FCLT's motion for summary judgment. Where a party moves for sum-

mary judgment on its own claim for affirmative relief, the moving party must conclusively establish each essential element of that claim. *See MMP, Ltd. v. Jones,* 710 S.W.2d 59, 60 (Tex.1986) (per curiam). If the party opposing the summary judgment relies on an affirmative defense, that party must then come forward with summary judgment proof sufficient to raise an issue of fact on each element of the defense to avoid summary judgment. *Brownlee v. Brownlee,* 665 S.W.2d 111, 112 (Tex.1984).

### Louise Bracher's Estate

■ In its fourth point of error, FCLT argues the trial court erred in denying its motion for summary judgment against "the Estate of Louise Bracher" [12] based on FCLT's debt claim. This point of error also asserts "trust assets and estate assets were subject to the debt and should have been used to pay the debt." Thus, FCLT's fourth point of error refers not only to whether it is entitled to judgment on the debt claim, but also to the separate question of which assets FCLT can reach to collect such a judgment. Despite the multifarious nature of FCLT's point of error, we address it because we can ascertain with reasonable certainty the alleged errors raised by FCLT. *See Zeolla v. Zeolla,* 15 S.W.3d 239, 241 n. 2 (Tex. App.-Houston [14th Dist.] 2000, pet. denied).

■ With respect to its debt claim, FCLT presented summary judgment proof of the following:

(1) Louise Bracher executed the Renewal Note, payable to First City Bank—Inwood Forest, N.A.;

(2) the Renewal Note became due on February 18, 1991;

(3) the Renewal Note was assigned to FCLT, the current owner and holder of the Renewal Note;

(4) Louise defaulted on the Renewal Note and, despite demands, she and the executors of her estate have failed to pay the amount owing; and

(5) as of January 10, 2000, the amount owed on the Renewal Note is $701,017.84 in principal and interest, with interest accumulating at $106.77 per day.

This proof is sufficient to establish FCLT's claim for a debt. *See Loomis v. Republic Nat'l Bank of Dallas,* 653 S.W.2d 75, 78 (Tex.App.-Dallas 1983, writ ref'd n.r.e.). Lawrence and Olson responded to FCLT's summary judgment motion only by asserting the statute of frauds as a defense. As discussed above, the statute of frauds does not preclude FCLT from asserting this claim against Lawrence and Olson in their capacities as co-executors of Louise's estate. We conclude FCLT has shown its entitlement to summary judgment on its debt claim against Lawrence and Olson, in their capacities as co-executors of Louise's estate.

■ FCLT next contends it conclusively established that all assets in the three trusts are subject to FCLT's debt claim

---

**12.** It is well-settled that the estate of a decedent is not a legal entity and may not sue or be sued as such. *Price v. Estate of Anderson,* 522 S.W.2d 690, 691 (Tex.1975). However, a judgment involving a decedent's estate may still be valid if the estate's personal representative "had notice of and participated sufficiently in the case to make the judgment binding against the representative." *Bernstein v. Portland Sav. & Loan Ass'n,* 850 S.W.2d 694, 700 (Tex.App.-Corpus Christi 1993, writ denied); *see also Embrey v. Royal Ins. Co. of Am.,* 22 S.W.3d 414, 415 n. 2 (Tex.2000). Lawrence and Olson, the co-executors of Louise's estate, both appeared and participated in this case in their capacities as executors of the estate. We therefore treat FCLT's fourth point of error as requesting judgment against Lawrence and Olson as personal representatives of the estate.

because the spendthrift clauses in the trusts are void with respect to claims by Louise Bracher's creditors. FCLT relies on section 112.035 of the Texas Property Code, titled "Spendthrift Trusts," which provides:

> If the settlor is also a beneficiary of the trust, a provision restraining the voluntary or involuntary transfer of his beneficial interest does not prevent his creditors from satisfying claims from his interest in the trust estate.

TEX. PROP.CODE ANN. § 112.035(d) (Vernon Supp.2002). FCLT asserts this section creates a statutory lien in its favor on all assets placed in the three trusts. However, FCLT cites to no Texas cases involving the situation presented here, in which the creditor seeks to satisfy its claim from assets in which the debtor no longer has a beneficial interest. In other words, whether or not section 112.035(d) would have permitted FCLT to satisfy its debt claim from the trust assets while Louise was alive, FCLT has not conclusively established its right to recovery from the trusts after her death.[13] The trial court did not err in denying summary judgment based on FCLT's alleged statutory lien on the trust assets.

▇▇▇▇▇ FCLT also argues assets distributed from Louise's estate prior to paying FCLT's claim were subject to the debt. Under section 37 of the Probate Code, property of a decedent received by the estate's beneficiaries is subject to payment of the decedent's debts. TEX. PROB.CODE ANN. § 37. To enforce a claim against the beneficiaries, however, the creditor must show, specifically, what property came into their hands from the estate. *Perkins v. Cain's Coffee Co.*, 466 S.W.2d 801, 802–03 (Tex.Civ.App.-Corpus Christi 1971, no writ). FCLT's summary judgment proof consists solely of Lawrence's testimony that she and others received "a few pieces of furniture," "some artwork," "a little bit of jewelry," and "a couple pieces of clothes" from Louise's estate. This testimony alone is insufficient to establish the distributed assets with enough specificity to enable the court to properly decree FCLT's lien. *See id.* at 803. Furthermore, FCLT has not shown conclusively that this property was subsequently sold, commingled, or lost its character so as to impose personal liability on the recipients. *Id.*

We sustain FCLT's fourth point of error with respect to the trial court's denial of FCLT's motion for summary judgment on its debt claim against Lawrence and Olson, as co-executors of Louise's estate. FCLT's fourth point of error is otherwise overruled.

## Lawrence and Olson, Individually

In points of error five and six, FCLT contends the trial court erroneously denied summary judgment against Lawrence and Olson, individually, based on FCLT's

---

**13.** In its motion for rehearing, FCLT urges us to follow decisions from three other jurisdictions holding that even after the settlor's death, a creditor may reach trust assets that the settlor/beneficiary could have used to pay the debt during his or her lifetime. *See In re Estate of Nagel*, 580 N.W.2d 810, 812 (Iowa 1998); *State St. Bank & Trust Co. v. Reiser*, 7 Mass.App.Ct. 633, 389 N.E.2d 768, 771 (1979); *In re Estate of Kovalyshyn*, 136 N.J.Super. 40, 343 A.2d 852, 859 (Hudson County Ct.1975); RESTATEMENT (SECOND) OF TRUSTS § 156(1) (1959). *But see Schofield v. Cleveland Trust Co.*, 135 Ohio St. 328, 21 N.E.2d 119, 122–23 (1939) (interpreting an Ohio statute on spendthrift trusts and concluding that a creditor's right to the settlor's interest in a trust terminates on the settlor's death). Because this is an issue of first impression in Texas, and it has not been fully briefed, either in the trial court or in this court, we express no opinion whether, as a matter of law, section 112.035(d) of the Property Code applies after the settlor's death.

claims they (1) breached their fiduciary duties, (2) hold trust assets subject to FCLT's debt claim, and (3) dissipated assets subject to FCLT's debt claim. For reasons discussed above, FCLT has not conclusively established the existence of a confidential relationship between itself and the executors of Louise's estate. Thus, summary judgment was properly denied as to FCLT's claim for breach of fiduciary duty.

 Next, FCLT asserts that Lawrence and Olson are personally liable for holding and dissipating assets subject to FCLT's debt because all assets in the trusts were subject to the debt, citing section 112.035(d) of the Property Code. We already have determined FCLT failed to establish as a matter of law that after Louise Bracher's death, the trust assets were subject to FCLT's debt claim under section 112.035(d). Thus, summary judgment was properly denied as to claims based on holding or dissipating trust assets. FCLT's fifth and sixth points of error are overruled.[14]

### Bracher–Noyes, James Bracher, and David Bracher

In its seventh, eighth, and ninth points of error, FCLT asserts the trial court erred in denying FCLT summary judgment against Bracher–Noyes and James Bracher, both individually and as co-trustees of the Family Trust, and against David Bracher individually. FCLT's claims against these appellees rest on the proposition that all of the assets in the trusts were subject to FCLT's debt claim. Because FCLT has not established this prop-

osition as a matter of law, summary judgment is inappropriate on its claims that assets in the Family Trust were improperly held, received, or dissipated by Bracher–Noyes, James Bracher, or David Bracher.

Furthermore, FCLT moved for summary judgment against Bracher–Noyes and James Bracher on its claim for breach of fiduciary duty. As discussed above with respect to appellees' motions for summary judgment, FCLT failed to present any summary judgment proof of a relationship between FCLT and the trustees of the Family Trust that would give rise to a fiduciary duty. Accordingly, summary judgment on this claim was properly denied. FCLT's points of error seven through nine are overruled.

### Accounting

 In its tenth point of error, FCLT claims the trial court erred in denying its motion for summary judgment to compel an accounting from Lawrence and Olson, as co-executors of Louise's estate, and from Bracher–Noyes and James Bracher, as co-trustees of the Family Trust. FCLT does not cite a single authority nor set forth any legal argument to support its contention that it is entitled to an accounting. A point of error not supported by authority is waived. *Wright v. Greenberg,* 2 S.W.3d 666, 673 (Tex.App.-Houston [14th Dist.] 1999, pet. denied). We overrule FCLT's tenth point of error.

### Foreclosure, Garnishment, and Injunctive Relief

 FCLT next complains the trial court erred in denying its summary judg-

---

14. FCLT argues for the first time on rehearing that it is entitled to a judgment that all trust assets are subject to FCLT's debt because it conclusively established that the transfer of assets into the trusts was a fraudulent transfer under TEX. BUS. & COM.CODE ANN.

§ 24.006(a). An issue raised for the first time in a motion for rehearing is too late to be considered. *See Lee v. Lee,* 47 S.W.3d 767, 799 (Tex.App.-Houston [14th Dist.] 2001, pet. denied).

ment motion for (1) foreclosure and/or garnishment of assets, and (2) an injunction against further dissipation of assets. Although FCLT refers to both trust and estate assets in the statement of its point of error, FCLT identifies only trust assets to which it claims an entitlement to foreclose or garnish. Because FCLT has not shown as a matter of law that all trust assets were subject to its debt claim, the trial court did not err in denying summary judgment on FCLT's request to foreclose or garnish those assets.

■ FCLT also claims it was entitled to an injunction preventing appellees from further dissipating or otherwise disposing assets from the trusts or estate. FCLT's brief points to no authority for its alleged entitlement to such injunctive relief. Accordingly, FCLT's complaint that the trial court erred in denying the injunction by summary disposition is waived. *See Wright*, 2 S.W.3d at 673. FCLT's eleventh point of error is overruled.

### Attorney's Fees

■ Finally, in its twelfth point of error, FCLT complains the trial court erred by not awarding FCLT its reasonable attorney's fees. Because the trial court granted summary judgment to appellees on all of FCLT's claims, it did not address FCLT's request for attorney's fees. However, because we conclude FCLT was entitled to judgment as a matter of law on its debt claim against Lawrence and Olson as co-executors of Louise Bracher's estate, we will consider whether FCLT has also established its entitlement to attorney's fees on that claim.

■ Attorney's fees may not be recovered from an opposing party unless such recovery is provided for by statute or by contract. *Travelers Indem. Co. of Conn. v. Mayfield*, 923 S.W.2d 590, 593 (Tex.1996). In this case, the Renewal Note provides for the recovery of FCLT's attorney's fees through the incorporation of a fee provision in Victor Bracher's original 1980 note. Paragraph 4 of the Renewal Note provides that Louise Bracher "agrees to be bound by and to abide by all of the terms and conditions contained in the [1980] Note and the Deed of Trust." The 1980 note states that if suit is filed to collect on a default, the debtor is liable for "a reasonable amount as attorney's or collection fees." Thus, FCLT is entitled to recover a reasonable fee from the representatives of Louise Bracher's estate in their capacities as co-executors of the estate.

As part of its summary judgment proof, FCLT submitted the affidavit of Mynde S. Eisen, FCLT's attorney, in support of FCLT's request for attorney's fees. In her affidavit, Eisen attested the following fees were reasonable: (1) $39,000.00 for services performed on behalf of FCLT to collect on the claims against appellees; (2) $29,900.00 in out-of-pocket costs and expert fees; (3) $10,000.00 to defend or prosecute an appeal; (4) $5,000.00 to prepare or respond to a request for review by the Texas Supreme Court; and (5) $5,000.00 to defend or prosecute an appeal in the supreme court. This affidavit is uncontested by appellees. We therefore sustain FCLT's twelfth point of error and render judgment for FCLT against Olson and Lawrence, in their capacities as co-executors, in the amounts of $68,900.00 in attorney's fees and costs for trial, $10,000.00 for appeal to this court, and $10,000.00 in conditional fees in the event of a petition for review and subsequent grant by the Texas Supreme Court.

### CONCLUSION

Based on the foregoing, we conclude as follows:

(1) Because the statute of frauds does not preclude FCLT's debt claim against Antoinette Lawrence and Barbara Olson in their capacities as co-executors of Louise Bracher's estate, and because FCLT has conclusively established its entitlement to judgment on this claim, we reverse the summary judgment granted in favor of Lawrence and Olson as co-executors and render judgment in favor of FCLT. We also render judgment against Lawrence and Olson, as co-executors of Louise's estate, for $78,900.00 as reasonable attorney's and collection fees, plus $5,000.00 in conditional fees for any petition for review to the Texas Supreme Court and $5,000.00 in conditional fees for any subsequent grant of review by the supreme court.

(2) FCLT's fraudulent transfer claims are not barred by limitations; therefore, we reverse the summary judgments in favor of Lawrence and Olson as co-executors of Louise's estate and Olson individually and remand these claims to the trial court for further proceedings.

(3) Because limitations does not bar FCLT's claim for breach of fiduciary duty against Olson, we reverse the grant of summary judgment in her favor on this claim and remand for further proceedings.

(4) We affirm the trial court's judgment in all other respects.